Hillsborough
No. 81-102

ROGER BROOKS

v.

CATHERINE M. TOPERZER

February 19, 1982

140

*Keefe & Keefe*, of Wilton (*John M. Keefe* on the brief), by brief for the plaintiff.

*Joseph C. Krolikowski*, of Nashua, by brief for the defendant.

PER CURIAM.  The issue in this land dispute case is whether the Trial Court (*Bean*, J.) erred when it approved a master's recommendation to quiet the defendant's title to certain property located in Hancock, New Hampshire. We find no error.

Prior to 1943 or 1944, Maro Brooks, father of the plaintiff, owned land in Hancock, known as the Pearson Pasture, which abutted land which the defendant owned. After 1944, the property in question was taxed to the defendant and/or her husband, Waldemar Stahl. The defendant claims ownership of the Pearson Pasture land under an alleged 1943 or 1944 deed to her and her husband. In 1977, the defendant sought to convey some of the Pearson Pasture land to her son, but she was unable to locate the alleged deed. As a result, she attempted to secure a substitute deed from the plaintiff, the sole surviving heir of Maro Brooks. The plaintiff, however, refused to provide a substitute deed, and furthermore, about a year later, brought this action to quiet title in himself. In her answer to the plaintiff's petition, the defendant claimed title through the alleged lost deed and through adverse possession.

The matter was tried before a Master (*Charles T. Gallagher*, Esq.) who found that in 1943 or 1944, Waldemar Stahl brought home a document which he gave to the defendant, instructing her to put it away with their other papers. According to the master's

findings, Waldemar was killed in an accident in 1950, and the document was lost sometime before the defendant moved to a new home in 1965. The master found that the document described the Upper Pearson Pasture, that it was signed by both Maro Brooks and Stahl, and that the signatures were witnessed, but not acknowledged. He further found that Stahl fenced the premises and ran sheep there until his death in 1950, and that the defendant has paid the taxes on the land from 1944 to the present. In addition, the master determined that none of the Brooks family used the pasture or made any claim to it until the defendant sought to replace the lost document. It was found that Maro Brooks agreed in the document to sell the property to Stahl, and that Stahl paid $100 as consideration, a reasonable price at the time. The master concluded that Stahl's heirs were entitled to a deed, and he therefore recommended a decree of specific performance, which the superior court approved.

The plaintiff subsequently filed a motion with the court to set aside its decree. After considering this motion, the master found specific performance to be "unsound" and recommended a decree quieting title in the defendant free from any claims of the plaintiff or those claiming under him. A decree was entered by *Bean*, J., in accordance with this recommendation, and the plaintiff appealed to this court.

■■ We hold that the evidence supported the master's findings that Maro Brooks agreed to sell the land to Stahl, and that a document as described above passed to Stahl and was later lost. Whether the document was a deed or an agreement is of little consequence as far as the final result is concerned. The conduct of the parties was consistent with their intention that Stahl be the owner, and he and his wife treated the land as theirs and paid taxes upon it, without any claim of ownership on the part of the Brooks family until the defendant attempted to obtain a deed. There was evidence that Maro Brooks stated that he had sold the land to Stahl. Furthermore, the land in question was not listed in the probate inventories of either Maro Brooks or his wife when they died in 1954. Certainly, these facts supported the master's recommendation to quiet title in the defendant. Although the probate records in Waldemar Stahl's estate did not include the Pearson Pasture land, this could be explained by the fact that the defendant believed the alleged lost deed created a joint tenancy.

■■ The plaintiff argues that the defendant's claim is barred by the statute of limitations (RSA 508:2, :4 (Supp. 1979) and :5) or

laches. The statute of limitations, however, did not begin to run until 1978, when the defendant had reason to know that an adverse claim was being made. *Cf. Shuris v. Morgan*, 118 N.H. 154, 157, 384 A.2d 489, 491 (1978); *Morrissette v. Sears, Roebuck & Co.*, 114 N.H. 384, 391, 322 A.2d 7, 12 (1974). The statute thus did not bar the cross-claim which the defendant brought in 1979. In addition, laches presented no bar because it was the plaintiff who initiated this litigation after the Stahls had possessed the land and paid taxes on it for thirty-four years. In view of these circumstances, resolution of the defendant's claim was not inequitable. *See Wood v. General Elec. Co.*, 119 N.H. 285, 289, 402 A.2d 155, 157 (1979). Contrary to the plaintiff's assertion, the Statute of Frauds (RSA 506:1) does not bar enforcement of the contract because the master found in accordance with the evidence presented that there was a writing signed by Maro Brooks which satisfied all the requirements of the statute. *See* 37 C.J.S. *Frauds, Statute of* § 281, at 809–10. *See generally Jesseman v. Aurelio*, 106 N.H. 529, 532, 214 A.2d 743, 745 (1965).

*Affirmed.*