Sullivan
No. 82-523

### DAVID M. BAYER & a.,
### EXECUTORS AND CO-TRUSTEES OF THE ESTATE OF CHARLES BAYER

v.

### SAM BAYER & a.

August 31, 1983

*Baker & Hayes*, of Lebanon (*William A. Baker* on the brief and orally), for the plaintiffs.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Joseph A. Millimet* on the brief and orally), for the defendants.

PER CURIAM. The plaintiffs, executors and co-trustees of the estate of their father, Charles Bayer, appeal from a dismissal by the Superior Court (*DiClerico*, J.) of certain actions relating to the operation of two family-owned corporations and a retail clothing store. We affirm.

The plaintiffs' decedent, Charles Bayer, was a partner with his brothers, Sam and Jack Bayer, in a retail clothing business known as Merit Clothing Company (Merit) in Claremont. The decedent was also a director of and stockholder in JSC Realty, Inc., and Eagle Merchandise, Inc., which were similarly owned and operated by the three brothers.

On June 15, 1953, the Bayer brothers, in their capacities as partners in Merit, entered into a "buy-sell" agreement which pro-

vided for the valuation and disposition of a partner's share upon his death or retirement from the business. The agreement was expressly made binding upon the parties, "their respective heirs, executors and administrators."

On April 20, 1954, the parties entered into a formal partnership agreement relative to the Merit partnership which incorporated by reference the terms of the "buy-sell" agreement. The partnership agreement provided that "[t]he death or retirement of any partner shall not dissolve the partnership as to the other partners . . . ." It further stated that:

> "All disputes and questions whatsoever which shall, either during the partnership or afterwards, arise between the partners or partner and the representatives of any other or others, touching these articles . . . or any account, valuation, or division of assets, debts, or liabilities to be made hereunder . . . shall be referred to Harry Bayar [the partners' fourth brother] of New York City as arbitrator, and his decision shall be binding and final . . . ."

Until 1970, the brothers appear to have run the various family businesses without substantial disagreement. The Merit partnership tax returns for 1970 and 1971, however, indicated a significant change in the structure of the partnership. Although the 1970 partnership return showed the value of the business as being divided equally among the partners' capital accounts, it also stated that only Sam and Jack continued to work at the business full time. The 1971 partnership return listed only two partners, Sam and Jack, between whom the business was evenly divided. However, the balance sheet included in the 1971 return indicated a liability for "[m]ortgages, notes, and bonds payable in 1 year or more" in the amount of $79,576.40. The defendants contend that this account payable represented Charles' liquidated, but unpaid, partnership share.

In 1972, the defendants' present counsel sent two letters to Charles, Sam, and Jack concerning the status of Charles' share of the Merit partnership. The first of these letters, dated September 11, 1972, and mailed at Sam's behest, recommended that the brothers' arrangement concerning Charles' liquidated partnership share be put in writing. The letter further stated:

> "As I understand the arrangement, since Charles has retired from work, he has continued to draw the same as each of the other brothers has drawn, just as though he were still active in the business. However, you have agreed to consider this as payment against his capital

account. The precise amount that has been drawn by Charles, either in the form of cash, clothing or other benefits, does not appear to be recorded anywhere, and therefore I think it would be desirable if this amount could now be determined and each year, at the end of the year, the credits against the capital account of $80,776.20 should be posted so that the balance due to Charles would be kept current.

If you think this letter correctly recites what your understanding is, I suggest that each of you endorse your consent on the bottom hereof, and keep a copy for yourself and return the original to me for filing."

The second letter, dated September 25, 1972, modified the statement of the brothers' financial arrangement as embodied in the first letter:

"Since writing my letter of September 11, Harry has called me and explained to me that I was in error in saying that there was no precise record of the amount due to Charles shown on the balance sheet. Harry points out that although there is no identification [of] a debt to Charles, there is recorded on the balance sheet of the income tax return as of the end of 1971, the sum of $79,576.40 representing notes payable in one year or more. This will be adjusted from year to year as the books are closed, and therefore I guess satisfies the requirement that there be a current account of the obligation to Charles.

I assume it could be brought up to date at any time by Harry by carrying forward the drawings during the course of any calendar year.

If this letter and the previous one correctly embodies everybody's understanding, I suggest that they be endorsed and returned to me for filing and safe keeping for the future."

There is no evidence that either of the above letters was endorsed or returned by the parties as the defendants' counsel had suggested. The plaintiffs do not, however, dispute the fact that the letters were written to Charles, Sam, and Jack.

A letter was sent to the plaintiffs' counsel on April 18, 1973, in which the defendants' counsel restated what appeared to the brothers to be their then-current financial arrangement:

"I assume you have copies of the partnership agreements of June 15, 1953 and April 20, 1954. I think you will find, if you examine them, that under the terms thereof,

the allocation of funds as reflected in the partnership agreements is correct. While Charles was in the business, he was getting his full partnership share like his two brothers. After he retired from the business, he still was allowed to draw funds, but they were charged against his capital account. This was required because he was no longer active in the business and therefore was not entitled to share in the earnings as such.

If you will examine page 4 of the return for April 1971, which is on a 1970 form, you will see that at the end of the fiscal year, Charles had a capital account of $80,776.21. If you will examine page 4 of the return for fiscal April 1972 (on a 1971 form), you will see that Charles' capital account is omitted, but there is a new entry under item 17 of the balance sheet represented by notes payable in one year or more in the amount of $79,576.40. I am informed by Harry Bayer, the accountant, that that is Charles' capital share as existing at the time of his retirement. I think the accountant had the absolute right to do this under the terms of the agreement, and I hope you will be able to explain it to Charles."

On April 22, 1977, Charles Bayer died. The parties agree that from 1971 until December 1977, Charles Bayer or his estate received regular weekly payments, which the defendants credited against Charles' liquidated capital account.

Between March 24 and May 23, 1980, David and Henry Bayer, as executors and co-trustees of the estate of their father, Charles Bayer, brought three separate actions in equity: one against Sam and Jack Bayer in their capacities as partners in Merit, one against JSC Realty, Inc., and one against Eagle Merchandise, Inc. In these suits, the plaintiffs alleged that the defendants wrongfully excluded their father from the three businesses and mismanaged the two corporations. The plaintiffs sought damages, dissolution of the defendant corporations, and an accounting of the decedent's share of the Merit partnership and of both corporations.

The defendants moved to dismiss all three actions on the ground that they were barred by RSA 508:4 (Supp. 1981), RSA 556:7, and RSA 556:15, the applicable statutes providing for the survival and limitation of actions. On February 16, 1982, the superior court granted the defendants' motion to dismiss, except as to "any cause of action which may exist as a result of defendants' cessation of certain weekly payments that were being made."

Subsequently, the plaintiffs requested a hearing, claiming that the court's decision was "plainly erroneous" with respect to the

defendants JSC Realty, Inc., and Eagle Merchandise, Inc. After a hearing, the court modified its original order regarding the plaintiffs' status as *stockholders* in JSC Realty, Inc., and Eagle Merchandise, Inc. The court's order stated that:

> "With respect to 80-017 [JSC Realty, Inc.] and 80-030 [Eagle Merchandise, Inc.], the Court's order on defendants' motion to dismiss dated February 16, 1982 is modified as follows: insofar as the petitioners are making claims arising out of their status as stockholders, said claims are not dismissed but are limited to not more than 6 years prior to the date of the filing of said actions. With respect to any personal rights claimed by the petitioners which do no[t] arise out of their status as stockholders said claims are dismissed."

The plaintiffs then brought this appeal.

It is noteworthy that, throughout these proceedings, the defendants have not disputed the plaintiffs' right to *recover* the unpaid balance of Charles Bayer's capital account in the Merit partnership. The defendants contend merely that the plaintiffs' right to sue for an *accounting* of that share is barred by RSA 508:4 (Supp. 1981), RSA 556:7, and RSA 556:15. Thus, the central issue concerning the Merit partnership suit is whether the right of Charles Bayer or his estate to sue for an accounting of his partnership share arose upon his allegedly wrongful exclusion from the partnership in 1971, or at the time of his death in 1977.

In ruling upon the motion to dismiss the plaintiffs' claims against Sam and Jack Bayer in their capacities as partners in Merit, the trial court properly assumed as true the plaintiffs' allegation that Charles Bayer was wrongfully excluded from the partnership in 1971. *Kibby v. Anthony Industries, Inc.*, 123 N.H. 272, 274, 459 A.2d 292, 293 (1983). The record shows that in the letters from the defendants' counsel dated September 11, 1972, and September 25, 1972, Charles Bayer was given a formal written statement of his "retirement" terms. Any cause of action based upon Charles Bayer's allegedly wrongful exclusion would therefore have accrued no later than September 25, 1972, the last date upon which the decedent received notice of his brothers' actions. *See Brooks v. Toperzer*, 122 N.H. 139, 141–42, 441 A.2d 1177, 1179 (1982); *Bailey v. Scribner*, 97 N.H. 65, 67, 80 A.2d 386, 387–88 (1951).

Under the then-controlling statute of limitations for personal actions, section 1 of chapter 378 of the 1969 session laws (current version at RSA 508:4 (Supp. 1981)), Charles Bayer had six years in which to bring an action for wrongful exclusion and an accounting,

*i.e.*, until September 25, 1978. Charles Bayer died on April 22, 1977, seventeen months before his cause of action expired under the statute. RSA 556:15 provides that actions "existing in favor of . . . a deceased person . . . shall survive, and may be prosecuted . . . by his administrator." Pursuant to RSA 556:15, therefore, the plaintiffs had only until September 25, 1978, to bring the present action. *Cf. Atwood v. Bursch*, 107 N.H. 189, 190, 219 A.2d 285, 286–87 (1966) (limitation contained in RSA 556:7 on right of administrator to prosecute action on behalf of decedent extends, rather than constricts, otherwise applicable period for bringing action). The plaintiffs did not bring this action against the Merit partners until March 1980, and the trial court therefore correctly found their claim to be barred by the applicable statutes of limitations.

■■ The plaintiffs, on appeal, appear to argue in the alternative that Charles Bayer was either *wrongfully excluded* or *ceased active participation* in the partnership in 1971, and that this withdrawal did not constitute a dissolution of the partnership under the partnership agreement. The plaintiffs cite several sections of the Uniform Partnership Act, RSA chapter 304-A (Supp. 1981), in support of their claim that the right to an accounting arose *after* their father ceased active participation in partnership business in 1971. However, after carefully reviewing the plaintiffs' pleadings, memoranda of law, and exhibits which were presented to the trial court, we are convinced that the only allegation raised by the plaintiffs on the defendants' motion to dismiss was that Charles Bayer was *wrongfully excluded* from the family businesses. The plaintiffs cannot now raise the alternative argument that their father *ceased active participation* in the businesses, thereby invoking the right to an accounting upon the dissolution of the partnership under the partnership agreement and the Uniform Partnership Act. We also find no merit to the plaintiffs' arguments that the continued weekly payments to Charles Bayer or his estate renewed the limitations period and that the defendants are estopped, under the circumstances of this case, from asserting the statutes of limitations as a defense.

The plaintiffs also appeal the trial court's order regarding their actions against JSC Realty, Inc., and Eagle Merchandise, Inc. We understand the court's modified order as limiting these actions by the plaintiffs as *stockholders* to claims arising not more than six years before the date the suits against the two corporations were commenced, but barring all actions brought as *executors and co-trustees* of their father's estate.

We note at the outset that the parties do not contest the plaintiffs' right to sue in their own right as stockholders for alleged corporate

wrongdoing occurring *before* the date they acquired ownership in their own right of the stock of the two corporations. We therefore need not review the superior court's order insofar as it allows the plaintiffs to pursue their actions directly as stockholders, rather than in a representative capacity as executors and co-trustees of their father's estate, for acts occurring before they acquired title to the corporate stock in 1977. *See Zahn v. Transamerica Corporation,* 162 F.2d 36, 48–49 (3d Cir. 1947); *but cf.* RSA 293-A:49, I (Supp. 1981) (shareholder has standing to bring *derivative* action on behalf of corporation only if he owned stock at the time of the conduct of which he complains or if shares thereafter devolved upon him by operation of law).

■■ We cannot accept the plaintiffs' argument, however, that their right to an accounting of corporate assets relates back to 1971 because of the continuous mismanagement of the two corporations since that time. The plaintiffs' claim is founded upon their contention that the statute of limitations involving wrongdoing by corporate directors cannot begin to run while those directors continue in office. While some courts have so held, we believe the better rule, supported by the weight of authority, is that "the statute of limitations applies both to actions at law and suits in equity to compel officers [or directors] to account for assets misappropriated by them, or to hold them liable for losses caused by their wrongful or unauthorized acts, or by other negligence." 3A W. FLETCHER, CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 1301, at 504–05 (rev. perm. ed. 1975); *see Swan v. Burnham,* 70 N.H. 580, 581, 49 A. 93, 93 (1900). Because the statute of limitations was applicable and because the plaintiffs did not commence their actions against the two corporations until 1980, the trial court correctly ruled that the plaintiffs could bring suit concerning wrongdoing occurring not more than six years before those actions were filed, but not back to 1971. Furthermore, based on the record before us, we do not believe that the tolling of the statute of limitations based upon fraudulent concealment is applicable in this case.

In summary, we affirm the trial court's ruling regarding the Merit partnership, and we affirm the court's order, as modified, concerning the two corporations and remand the case for further proceedings.

*Affirmed and remanded.*