Grafton
No. 2012-364

SIGNAL AVIATION SERVICES, INC.

v.

CITY OF LEBANON

Submitted: January 16, 2013
Opinion Issued: February 13, 2013

*Law Office of Stephen P. Girdwood, PLLC*, of Lebanon (*Stephen P. Girdwood* on the brief), for the petitioner.

*Gardner Fulton & Waugh PLLC*, of Lebanon (*Adele M. Fulton* and *Joshua M. Pantesco* on the brief), for the respondent.

DALIANIS, C.J. The petitioner, Signal Aviation Services, Inc. (Signal), appeals an order of the Superior Court (*Vaughan*, J.) granting the motion to dismiss filed by the respondent, City of Lebanon (City). We affirm in part, reverse in part, and remand.

The following facts are found in the record. The City owns the Lebanon Municipal Airport. In July 1996, the City entered into a twenty-year lease with HL Leasing for certain airport land. HL Leasing assigned its rights under the lease to Sierra Nevada Helicopters, which then assigned the rights to its affiliate, Signal. In the lease, the City agreed, among other things, that it would not allow any other provider of commercial aeronautical services to operate at the airport "under rates, terms [or] conditions" that were more favorable than those set forth in the lease.

Signal's leased premises consist of approximately nine acres upon which various improvements have been constructed, including a main hangar, a

terminal facility, and a "fuel farm for the storage of relevant petroleum products." In 2006, the City increased the assessed value of Signal's leased land, not including the improvements, from $77,400 to $868,300, which resulted in a corresponding increase in Signal's property taxes. The rate at which the City assessed the land, not including the improvements, was approximately $97,452 per acre.

Signal claims that the City assessed its land disproportionately "as compared to other entities operating and leasing land at the [a]irport." It observes that the City has taxed two airport tenants with parcels similar to Signal's at rates of approximately $61,000 per acre and approximately $30,000 per acre, respectively.

■ Signal unsuccessfully applied to the City's assessors for an abatement of its 2006 and 2007 taxes and then appealed to the New Hampshire Board of Tax and Land Appeals (BTLA). In an August 2009 decision, the BTLA dismissed the appeals because Signal failed to present any evidence of the market value of its property. Absent such evidence, the BTLA ruled that it could not determine "whether [Signal] is over[-]assessed or whether [the properties of the other airport tenants] are under[-]assessed or some of both." *See Verizon New England v. City of Rochester*, 151 N.H. 263, 272 (2004) (To prove disproportionality, taxpayer must establish "that its property is assessed at a higher percentage of fair market value than the percentage at which property is generally assessed in the city.").

■ Although Signal argued that its lease with the City precluded the City from assessing the other two similarly situated properties "on a different per acre basis," the BTLA decided that it had no jurisdiction to adjudicate Signal's breach of contract claim. Nonetheless, the BTLA observed that the City was required to "assess relative to market value" and could "not be bound by any contractual restriction" on its taxing authority, unless otherwise provided for by statute. *See* RSA 75:1 (2012) (all taxable property except as identified in statute must be assessed "at its market value"); *Pheasant Lane Realty Trust v. City of Nashua*, 143 N.H. 140, 143 (1998) (power to tax arises solely by statute); *Mack v. Jones*, 21 N.H. 393, 395 (1850) (municipalities may not "change or modify the public law regulating taxation").

Signal did not appeal the BTLA's 2009 decision. Nor did Signal contest the City's 2008 and 2009 assessments of its property by applying to the assessors for abatement.

In February 2010, Signal filed the instant petition against the City, alleging that the City "materially breached its obligations under the Lease by providing more favorable and disproportionate tax assessments and taxation schemes" to "other entities at the [a]irport." Signal specifically

alleged that: (1) the City "disproportionately assessed" Signal's property "as compared to [the property of] other entities operating and leasing land at the Airport"; and (2) as a result of the disproportionate assessment, "Signal's tax bill amounts to disproportionate rates and terms for operation of its commercial aeronautical services provided at the Airport as compared to other tenants operating there."

Signal also alleged that it "is obligated to pay taxes on a larger portion of the airport property" than similarly situated competitors. Signal alleged that "[t]he method used by the City to attribute taxable land to tenants" at the City's "newly constructed Executive Ramp facility" leaves "a significant portion of the land comprising the Executive Ramp untaxed." Signal alleged that, accordingly, the Executive Ramp tenants had more favorable terms and conditions than those under which Signal operates and that these favorable terms and conditions gave the Executive Ramp tenants "a competitive advantage over Signal."

For this conduct, Signal sought damages, including a set-off against current taxes due to the City. Signal also brought a claim for equitable relief "in the form [of] an order prohibiting further disparate tax assessment of providers of aeronautical services on leased land at the Airport" and "granting a stay of the imposition of interest and penalties against Signal for taxes owed on [its leased land]."

The City moved to dismiss Signal's "claims for tax relief," arguing that the monetary relief Signal sought in its lawsuit — abatement of its 2006-2010 taxes — was outside of the trial court's jurisdiction to grant. The City contended that the statutory abatement process was Signal's exclusive remedy for disproportionate taxation.

The trial court agreed with the City "that although the petition is styled as a breach of contract, the relief sought by [Signal] is abatement of five years of taxes." Accordingly, the court determined that Signal could not maintain its claims for abatement of its 2006 and 2007 taxes because it failed to adhere to the statutory process for abating taxes. The court ruled that once Signal lost its appeal of the assessors' denial of its abatement requests, its "only recourse . . . would have been an appeal [of the BTLA's decision] to the Supreme Court." The court decided as well that Signal could not seek abatement of its 2008 and 2009 taxes in superior court because it failed to request abatement first from the assessors. Finally, the court ruled that any claim Signal had that its 2010 taxes were disproportional was not yet ripe for review because its request for abatement was still pending before the assessors.

Having concluded that Signal's breach of contract claim was actually a request for tax abatement and that none of Signal's abatement requests were properly before it, the trial court dismissed Signal's breach of

contract claim. Because the court found that Signal's breach of contract claim failed to state a claim upon which relief could be granted, the court also denied its request for equitable relief based upon that claim. Signal unsuccessfully moved for reconsideration, and this appeal followed.

"In reviewing a motion to dismiss, our standard of review is whether the allegations in the [petitioner's] pleadings are reasonably susceptible of a construction that would permit recovery." *Suprenant v. Mulcrone*, 163 N.H. 529, 530 (2012). We assume the petitioner's allegations to be true and construe all reasonable inferences in the light most favorable to it. *Id.* However, we need not accept allegations that are merely conclusions of law. *Id.* "We then engage in a threshold inquiry, testing the facts alleged in the pleadings against the applicable law." *Id.* at 530-31. "We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief." *Id.* at 531.

■ "The New Hampshire tax abatement statutes are remedial in nature" and "provide *the exclusive remedy* available to a taxpayer dissatisfied with an assessment made against his property." *LSP Assoc. v. Town of Gilford*, 142 N.H. 369, 374 (1997) (emphasis added). Under our tax abatement statutory scheme, municipal assessors have the authority to abate taxes "for good cause shown." RSA 76:16, I (2012). If the assessors refuse to do so, the taxpayer may appeal to either the BTLA, *see* RSA 76:16-a (2012), or the superior court, *see* RSA 76:17 (2012). "The taxpayer may choose which forum to use, but may not use both." *LSP Assoc.*, 142 N.H. at 373. "The superior court's jurisdiction in an abatement proceeding is appellate." *Id.* at 374.

Signal argues that the trial court erred when it concluded that its breach of contract claim was a claim for abatement of taxes and, therefore, to be justiciable, Signal first had to adhere to the statutory tax abatement scheme set forth above. To support this assertion, Signal contends that its lease constituted an "additional layer of bargained for protection" against disproportionate taxation and that it should be allowed contractual remedies for the City's breach of its contractual obligation not to tax Signal disproportionately. Alternatively, Signal argues that its lease required the City to treat "parties equally" and that the City violated this requirement when it used a scheme "to determine the amount of taxable land attributable to other tenants at the Airport" different from the scheme used to determine the amount of taxable land attributable to Signal.

Our decision in *Porter v. Town of Sandwich*, 153 N.H. 175 (2006), is dispositive. *Porter* concerned an agreement between the plaintiff taxpayers and the defendant town entered into pursuant to RSA chapter 79-D, which allows "towns to enter into agreements to reduce taxes imposed upon

residents who own structures that are both historical and agricultural, because the maintenance of such structures benefits the public interest." *Porter*, 153 N.H. at 176. The parties' agreement required the plaintiffs to maintain their two historical, agricultural buildings and accept an easement on their land. *Id.* In exchange, the town agreed to assess the buildings for twenty-five percent less than their full value as of a certain date, and to not increase the assessment as a result of repairs or improvements the plaintiffs made pursuant to the agreement. *Id.*

After the agreement, the town re-evaluated all properties in the town and increased the assessment of the plaintiffs' two properties from $8,407 to $50,527. *Id.* The plaintiffs eventually sued the town for breach of contract and for violation of RSA chapter 79-D. *Id.* The trial court dismissed their lawsuit, concluding that because the plaintiffs failed to follow the statutorily required procedure for tax abatement in RSA 76:17, the court lacked subject matter jurisdiction to decide their breach of contract and statutory claims. *Id.*

■ We concluded that the plaintiffs' claims were not for an abatement of taxes, and, therefore, they "were not required to follow the statutorily prescribed abatement procedure to confer jurisdiction on the superior court." *Id.* at 178. The issue in an abatement proceeding, we explained, is "whether the government has taxed the plaintiff out of proportion to other property owners in the taxing district." *Id.* at 177. "We have also held that an abatement proceeding may address a claim of inability to pay a tax levy." *Id.* We reasoned that if the plaintiffs were seeking an abatement of taxes in their lawsuit, they would have argued "that they were unable to pay the higher taxes levied by the Town," or that "the Town assessed them disproportionately." *Id.* The plaintiffs, however, made neither of these arguments, asserting, instead, only that the town had violated the agreement and misinterpreted RSA chapter 79-D. *Id.* We concluded, therefore, that their claims were not for tax abatement and that the superior court had jurisdiction over them. *Id.* at 177-78.

■ Consistent with *Porter*, we conclude that to the extent that Signal's breach of contract claim sought relief from "disproportionate taxation," its claim is unavailing. Contrary to Signal's assertions, a claim for "disproportionate taxation" is, in effect, a claim for abatement of taxes, and, as such, may be pursued only through the tax abatement statutory scheme. *Id.* at 177. We, therefore, uphold the trial court's decision insofar as it relates to Signal's allegations of "disproportionate taxation." However, to the extent that Signal's breach of contract claim sought relief from "unequal treatment," specifically with respect to the amount of taxable land the City attributes to Signal and to other airport tenants with which the City

contracts, Signal may pursue this claim without complying with the tax abatement statutory process. *See id.* at 177-78. We, therefore, reverse the trial court's decision insofar as it concerns Signal's allegations about unequal treatment unrelated to disproportionate taxation.

In arguing that it should be allowed to pursue a breach of contract claim for disproportionate taxation, Signal mistakenly relies upon our recent decision in *Lebanon Hangar Assocs. v. City of Lebanon*, 163 N.H. 670 (2012). In that case, the plaintiff, Lebanon Hangar Associates (Lebanon Hangar), like Signal, had a lease with the City to rent land at the Lebanon Airport. *Lebanon Hangar*, 163 N.H. at 671. Lebanon Hangar's lease required it to pay "taxes lawfully levied or assessed." *Id.* (quotation and ellipsis omitted). Nevertheless, from 1996 until October 2006, the City did not tax Lebanon Hangar on the value of the land itself; it limited its assessment of taxes to the value of Lebanon Hangar's building. *Id.* In October 2006, the City changed its practice and assessed a tax upon the value of Lebanon Hangar's land, which increased the total assessment of Lebanon Hangar's property from $77,400 in 2005 to $360,400 in 2006. *Id.* Lebanon Hangar sought an abatement of its taxes from the assessors, who denied it, and then appealed to the superior court. *Id.*; *see* RSA 76:17. Lebanon Hangar also claimed that the City breached the lease by demanding the payment of taxes. *Lebanon Hangar*, 163 N.H. at 671. The City sought to arbitrate the breach of contract claim. *Id.* The sole issue for our review in the appeal was whether, in deciding that the lease did not require Lebanon Hangar to pay taxes to the City based upon the value of its land, the arbitrator exceeded the scope of his authority. *Id.* at 672-73.

Signal relies upon *Lebanon Hangar* to support its contention that a taxpayer can have both a contractual and a statutory remedy when a municipality engages in disproportionate taxation. Signal argues that in *Lebanon Hangar* we upheld the notion that a municipality's statutory authority to tax can be modified by contract. *But see Piper v. Meredith*, 83 N.H. 107, 113 (1927) ("a town cannot, by grant or stipulation in a conveyance, exempt land from taxation"); *Mack*, 21 N.H. at 396 (any attempt by town to grant land permanent exemption from taxation was "illegal and void"). Although our decision could be read to imply approval of this notion, in fact, this was not an issue in the *Lebanon Hangar* appeal. As the City aptly observes in its brief, in *Lebanon Hangar*, "[t]he merits of the underlying action were not before the Court, and the legality or enforceability of the underlying contract was not decided." (Citation omitted.)

> *Affirmed in part; reversed in part; and remanded.*

HICKS, CONBOY and LYNN, JJ., concurred.