NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court – Manchester Family Division
No. 2013-199


IN THE MATTER OF CHERYL SERODIO AND ARTHUR PERKINS

Argued:  February 19, 2014
Opinion Issued:  August 22, 2014


Primmer Piper Eggleston & Cramer, PC, of Manchester (Doreen F. Connor on the brief and orally), for the petitioner.


Dianne Martin, of Bedford, by brief, and Brennan, Caron, Lenehan, & Iacopino, of Manchester (William E. Brennan orally), for the respondent.


BASSETT, J.  In this interlocutory appeal from an order of the Circuit Court (Introcaso, J.), the respondent, Arthur Perkins, challenges the court's dismissal of his motion to enforce the terms of a prenuptial agreement (Agreement).  See Sup. Ct. R. 8.  In its order granting the motion to dismiss filed by the petitioner, Cheryl Serodio, the trial court ruled that the respondent's failure to produce the original or a copy of the Agreement signed by the petitioner was fatal to his effort to enforce its terms.  We reverse and remand.

We accept the statement of the case and facts as presented in the interlocutory appeal statement and rely upon the record for additional facts as necessary.  See Lawrence v. Philip Morris USA, 164 N.H. 93, 95 (2012).  The parties married in 1988.  In 2010, the petitioner filed for divorce.  In October

2011, the respondent moved to enforce the Agreement, attaching to his motion a copy of the Agreement that had been signed only by him, and requesting that the court schedule an evidentiary hearing. In his motion, he alleged, in part, that:

1. The Parties entered into [a] Prenuptial Agreement prior to their October 8, 1988 marriage, which Agreement identified and protected certain assets in the event the marriage ended in divorce;

2. One original document was signed by both parties and was kept in the possession of the Petitioner;

3. Petitioner claims that she is unable to locate the original document;

4. The Respondent possesses a copy of the original Prenuptial Agreement and requests that the copy be admitted as evidence of the Prenuptial Agreement should the original not be found;

5. It would be in the best interests of judicial economy to determine the validity of the Prenuptial Agreement prior to a final hearing to limit the issues to be finally determined and to enable the parties to engage in meaningful settlement negotiations . . . .

The petitioner objected, stating that she did not recall signing the Agreement, and that she never possessed an original signed document. She further argued that, even if she had signed the Agreement, her agreement was not voluntary, but rather was the product of duress and undue influence.

In April 2012, the petitioner moved to dismiss the respondent's motion to enforce, arguing, among other things, that she should prevail as a matter of law under the statute of frauds because the respondent had failed to produce a copy of the Agreement signed by her. She also asserted that the trial court had no statutory power to consider — or enforce — an oral or unsigned prenuptial agreement. The respondent objected, arguing that the allegations contained in his motion to enforce were reasonably susceptible of a construction that would permit recovery. He also argued that the petitioner could not prevail on her statute of frauds argument because he had acted in reasonable reliance upon the existence and enforceability of the Agreement.

The court held a hearing on November 30, 2012. At that time, counsel for the respondent acknowledged that the respondent had not been able to locate the original or a copy of the Agreement that had been signed by the petitioner. After considering the offers of proof and legal arguments, the trial

2

court ruled from the bench, granting the motion to dismiss. In a subsequent written order, the trial court stated:

> Here, no final, executed Prenuptial Agreement exists. There is a request that the Court accept a copy of a draft agreement that is not signed by the person against whom it is to be enforced. The Court agrees with the Petitioner that this Court has no statutory power to consider an oral antenuptial agreement, nor does it have statutory power to consider an unexecuted antenuptial agreement. The Respondent's common law and evidentiary arguments that might suggest otherwise present such uncertainties that the Court could not credibly maintain its standards of fairness in enforcing these types of agreements.

(Quotation and citation omitted.) The trial court denied the respondent's motion for reconsideration, and this appeal followed.

On appeal, the respondent argues "[t]hat the trial court overlooked the standard of review for a motion to dismiss when it failed to assume the truth of the facts alleged by the [respondent], including the truth of the allegation that a written, executed [prenuptial] agreement was entered into by the Parties." The respondent also argues that the trial court erred because the threshold issue is whether the signed Agreement, in fact, had existed, not, as the trial court ruled, whether the signed Agreement presently exists. The petitioner responds that, since the respondent did not produce a prenuptial agreement signed by the petitioner, the trial court properly concluded that it had no statutory authority to enforce the terms of the Agreement. See RSA 506:2 (2010); RSA 460:2-a (2004). The petitioner also argues that the court does not have the statutory power to enforce an oral or unsigned prenuptial agreement.

As an initial matter, we observe that the petitioner's arguments regarding the enforcement of an oral or unsigned prenuptial agreement focus on the wrong issue. The respondent is not requesting that the trial court enforce an oral or unsigned agreement; rather, he is seeking to enforce the terms of a written, signed prenuptial agreement, notwithstanding the fact that neither a signed original nor a copy thereof has been produced in court. Accordingly, we turn to the question before us: whether the factual allegations in the respondent's pleadings are reasonably susceptible of a construction that would permit recovery.

"In reviewing a motion to dismiss, our standard of review is whether the allegations in the [respondent's] pleadings are reasonably susceptible of a construction that would permit recovery." Signal Aviation Servs. v. City of Lebanon, 164 N.H. 578, 582 (2013) (quotation omitted). We assume the respondent's allegations to be true and construe all reasonable inferences in the light most favorable to him. Id. However, we need not accept allegations

3

that are merely conclusions of law.  Id.  "We then engage in a threshold inquiry, testing the facts alleged in the pleadings against the applicable law." Id. (quotation omitted).  "We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief."  Id. (quotation omitted).

The respondent's motion to enforce the Agreement alleges that a written prenuptial agreement existed, and that both parties signed it.  Assuming, as we must, the truth of the respondent's allegations, we conclude that the allegations in the respondent's motion are reasonably susceptible of a construction that would permit recovery.  See Signal Aviation Servs., 164 N.H. at 582.  The petitioner contends that the statute of frauds, RSA 506:2, precludes the trial court from considering the Agreement unless a copy signed by the petitioner presently exists.  We disagree.  Accordingly, the trial court erred in granting the motion to dismiss.

Resolution of this issue requires us to engage in statutory interpretation. In the Matter of Lyon & Lyon, 166 N.H. ___, ___ (decided May 30, 2014).  We review the trial court's interpretation de novo.  Id.  In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole.  Id.  When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used.  Id.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  Further, we interpret a statute in the context of the overall scheme and not in isolation.  Id.  When the language of a statute is plain and unambiguous, we do not look beyond it for further indications of legislative intent.  Id.  However, we review legislative history to aid our analysis when the statutory language is ambiguous or subject to more than one reasonable interpretation.  Id.

The relevant statute of frauds provision provides that:

No action shall be brought . . . upon any agreement made in consideration of marriage . . . unless such promise or agreement, or some note or memorandum thereof, is in writing and signed by the party to be charged or by some person authorized by him.

RSA 506:2.  Thus, in order to bring an action upon a prenuptial agreement, the agreement must be in writing.  RSA 506:2 does not, however, require the production of the writing; nor does it speak to the method of proving that a written agreement existed.

Our prior cases establish that it is unnecessary to produce a signed copy of an agreement in order to prove that the agreement existed.  See MacThompson Realty v. City of Nashua, 160 N.H. 175, 178 (2010); Brooks v.

4

Toperzer, 122 N.H. 139, 142 (1982). For instance, in MacThompson, the intervenors argued that the statute of frauds barred enforcement of a lost settlement agreement for the sale of land. MacThompson, 160 N.H. at 178. We ruled that the trial court could find the existence of the written settlement agreement based upon testimony of attorneys present during the creation of the agreement and a subsequent letter written by one of those attorneys that confirmed the existence of the settlement agreement. Id. Similarly, in Brooks, a deed transferring ownership of land had been lost. Brooks, 122 N.H. at 141. We held that the statute of frauds did not bar enforcement of the deed because the defendant had proved that a writing which satisfied the statute of frauds existed through the conduct and statements of the parties. Id. at 142; see also Skaling v. Remick, 97 N.H. 106, 108 (1951) ("The absence of the original being satisfactorily accounted for, the office copy was admissible as the best evidence available," even though the office copy had no witnesses). We find this analysis equally applicable in the context of a prenuptial agreement.

The petitioner argues that Brooks is distinguishable because it did not involve a contract between parties in a confidential relationship. Brooks, 122 N.H. at 141. We agree with the petitioner that a court must closely scrutinize a prenuptial agreement because such an agreement involves persons in a confidential relationship, and therefore, fairness must be the ultimate measure. However, although courts must scrutinize prenuptial agreements more closely than commercial contracts, In re Hollett, 150 N.H. 38, 42-43 (2003), this does not mean that a greater quantum of proof is required to prove the existence of a prenuptial agreement than is required to prove the existence of other types of contracts.

The petitioner has not cited, nor could we find, any case in which a court has precluded a party from presenting evidence that a lost or destroyed prenuptial agreement had, in fact, existed. Indeed, there is case law that supports the reverse proposition: that a party may introduce an incomplete and unsigned prenuptial agreement as evidence that a written prenuptial agreement once existed. In re Devoe's Estate, 84 N.W. 923, 924-26 (Iowa 1901). As the Supreme Court of Iowa observed in Devoe, construing the statutes as the petitioner suggests would create an insurmountable obstacle for a party seeking to enforce an agreement that, through no fault of his own, has been lost or destroyed:

> [W]hile it is a general principle, firmly established in the interests of justice, that the best evidence capable of production shall be required, this rule in no way conflicts with the admission of secondary evidence of a lost instrument, even though it be one which the law requires to be in writing; for, if the instrument were lost without the fault of either party, or if it were wantonly destroyed or secreted by one, it would be a manifest subversion of justice to deny oral proof of its contents after satisfactory proof of its loss or destruction.

5

Id. at 926.  Accordingly, we hold that the prior existence of a written, signed prenuptial agreement may be shown through secondary evidence.  Given our ruling, we need not address the parties' additional arguments.

<u>Reversed and remanded</u>.

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.