Merrimack
No. 2012-705

TOWN OF NEWBURY & a.

v.

NEW HAMPSHIRE FISH AND GAME DEPARTMENT & a.

Argued: April 11, 2013
Opinion Issued: June 28, 2013

*Upton & Hatfield, LLP,* of Portsmouth (*Justin C. Richardson* on the joint brief and orally), for petitioner Town of Newbury.

*McLane, Graf, Raulerson & Middleton, PA,* of Concord (*Gregory H. Smith* on the joint brief), for petitioner Lake Sunapee Protective Association.

*Michael A. Delaney,* attorney general (*K. Allen Brooks,* senior assistant attorney general, on the brief and orally), for the respondents.

CONBOY, J. The respondents, New Hampshire Fish and Game Department (F&G) and New Hampshire Council on Resources and Development (CORD), appeal a decision of the Superior Court (*Smukler,* J.) granting summary judgment to the petitioners, Town of Newbury and Lake Sunapee Protective Association, on their writ of certiorari challenging CORD's decision to approve F&G's design of a boat launch. *See* RSA 162-C:6 (2002). The trial court ruled that CORD lacked authority to approve the boat

launch because it is a class III-a public highway and, according to the court, pursuant to RSA 162-C:6, IV, CORD has no authority to approve "new highway projects." We reverse and remand.

The following facts are supported by the record or are otherwise undisputed. In 1987, the legislature established the Land Conservation Investment Program (LCIP) to "preserve the natural beauty, landscape, rural character, natural resources, and high quality of life in New Hampshire by acquiring lands and interests in lands of statewide, regional, and local conservation and recreation importance." RSA 221-A:2 (Supp. 1987) (repealed 1995). The LCIP was authorized to acquire land through negotiations with landowners. *Id.* In 1989, the LCIP received an application for it to purchase approximately 135 acres of land in Newbury known as the "Wild Goose Property." A 3.3 acre parcel of the Wild Goose Property abuts Lake Sunapee (lake frontage parcel). The application provided that the "lake frontage parcel would be used for public boat launching on Lake Sunapee and as a picnic area." With authorization from the Governor and Executive Council, the LCIP purchased the Wild Goose Property in November 1990.

In 1995, the legislature repealed RSA chapter 221-A, *see* Laws 1995, 10:16, VII, and transferred management of all land acquired under the LCIP to CORD, *see* RSA 162-C:6. CORD assigned management of the lake frontage parcel to F&G, *see* RSA 162-C:9 (Supp. 2012), which thereafter functioned as the lead agency with respect to the design, construction, and maintenance of the boat launch. In 2009, F&G proposed a design for the boat launch, which included paving a portion of the lake frontage parcel, creating more than forty parking spaces, servicing a dual poured-concrete boat ramp, and installing permanent lighting fixtures.

On April 2, 2012, CORD held a meeting to consider whether F&G's design satisfied the goals under RSA 162-C:6. The petitioners objected, arguing, among other things, that CORD lacked authority to approve the boat launch. CORD disagreed and found that the design properly balanced the needs of conservation and public access under RSA 162-C:6.

The petitioners then brought the instant proceeding, seeking, among other things, a writ of certiorari on the ground that CORD's decision violated RSA 162-C:6. The respondents moved for summary judgment. The trial court denied CORD's motion and instead entered summary judgment for the petitioners. Referring to RSA 162-C:6, IV, the court ruled that "CORD is not authorized by its governing statute to approve the [boat launch] project," and that if the respondents wished to continue with the proposed boat launch, they were required to obtain legislative approval. The respondents appealed.

The respondents argue that the trial court erred in ruling that CORD's approval of F&G's design of the boat launch exceeded its authority under RSA 162-C:6. This presents an issue of statutory interpretation. "We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." *Frost v. Comm'r, N.H. Banking Dep't,* 163 N.H. 365, 374 (2012). "When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used." *Id.* "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Id.* "We also interpret a statute in the context of the overall statutory scheme and not in isolation." *Id.* We review issues of statutory interpretation *de novo. Id.*

CORD is charged with managing lands "according to the provisions of [RSA chapter 162-C] and consistent with agreements entered into with persons with ownership interests in such lands." RSA 162-C:6, II. Under RSA 162-C:6, III, CORD must manage lands "so as to preserve the natural beauty, landscape, rural character, natural resources, and high quality of life in New Hampshire," as well as "maintain and protect benefits derived from such lands and maintain public access to such lands, where appropriate." Because CORD holds LCIP land in trust for the public's benefit, "no deviation in the uses of any land or interest in land so acquired [under the LCIP] to uses or purposes not consistent with the purposes of [RSA chapter 162-C] [is] permitted." RSA 162-C:10 (2002). "The sale, transfer, conveyance, or release of any such land or interest in land from public trust is prohibited." *Id.* CORD may, however, assign its responsibilities to other state agencies or municipalities, review such assignments, and reassign its responsibilities as it deems advisable. *See* RSA 162-C:9.

RSA 162-C:6, IV provides:

Notwithstanding paragraphs I-III, [CORD] shall recognize that the interest of public safety and welfare may, from time to time, require minor expansion, minor modification, or minor alteration of existing roads within the state highway system. After review and approval by [CORD], and notwithstanding RSA 162-C:10, the department of transportation may obtain interests in lands acquired under the former RSA 221-A [LCIP] adjacent to state highways. Permissible expansion, modification, or alterations under this section shall include drainage easements, slope easements, lane widening, the addition of a passing, climbing, or turning lane, or similar adjustments, but shall not include construction of a new highway or portion thereof, construction of a bypass for an existing highway, or similar major alterations. Approval shall not be granted if reasonable and prudent alterna-

tives exist nor if individual or cumulative approvals are likely to materially impair the conservation purposes for which the parcel was originally protected. Projects determined by the council to be outside the scope permitted by this subdivision shall require approval from the general court.

The trial court relied upon RSA 162-C:6, IV in ruling that CORD lacked statutory authority to approve the boat launch. It found that RSA 162-C:6, IV "clearly provides that new highway projects are outside the scope of CORD's limited authority — they must be approved by the legislature." The court then found that boat launches are class III-a highways under RSA 229:5, III-a (2009), which provides that "[c]lass III-a highways shall consist of new boating highways from any existing highway to any public water in this state." The trial court concluded that "[b]ecause this launch would be new construction, and because a boat launch is statutorily defined as a highway, CORD is not authorized by its governing statute to approve the project." We disagree with this interpretation.

■■ Section IV is an exception to the statutory mandate that CORD manage lands pursuant to RSA 162-C:6, I-III and an exception to RSA 162-C:10's prohibition against transfers of land from the public trust. It applies, however, only when the department of transportation (DOT) seeks to "obtain interests in [LCIP] lands," thereby removing such interests from the public trust. It is undisputed that DOT is not an actor here. Even assuming that F&G stands in DOT's place for purposes of applying section IV, the exception still does not apply. There is no evidence in the record that F&G seeks to obtain a legal interest in LCIP land, and the petitioners do not so contend. Instead, CORD has delegated its management authority to F&G. Although the trial court implicitly found that CORD's delegation of its management authority qualified as an "interest" under section IV, the petitioners do not press this point, and, in any event, we disagree with such a reading. The lake frontage parcel remains in the public trust, and CORD may reassign management of the parcel at any time. See RSA 162-C:9.

■ Further, CORD must seek approval from the general court under section IV only when it concludes that a project is outside the scope of RSA 162-C:6. Here, CORD has concluded that F&G's design is consistent with the purposes set forth under RSA 162-C:6, I-III. In fact, the original purchase application, which the Governor and Executive Council approved, specifically provided that the lake frontage parcel would be used for public boat launching. Thus, we do not construe section IV to limit CORD's authority to approve F&G's design of the boat launch.

The petitioners do not endorse the trial court's interpretation of section IV. Instead, they contend that the trial court ruled that CORD lacked the

authority to approve the boat launch design because the trial court found that the design violated sections I-III. There is nothing in the trial court's order to support this contention. The trial court's logic is clear: (1) section IV states that CORD has no authority to approve the construction of a new highway; (2) a boat launch is a highway; and (3) therefore, CORD has no authority to approve the boat launch's design.

Because we conclude that the trial court erred when it ruled that CORD lacked the authority to approve the boat launch design merely because the boat launch is a class III-a highway, we reverse its ruling and remand for the court to decide the petitioners' remaining claims, including whether approval of the boat launch design violated sections II and III.

*Reversed and remanded.*

DALIANIS, C.J., and LYNN and BASSETT, JJ., concurred.