NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2013-594


WAYNE H. KASSOTIS

v.

TOWN OF FITZWILLIAM

Argued: April 16, 2014
Opinion Issued: August 28, 2014


Sheldon, Davis, Wells & Hockensmith, P.C., of Keene (James Romeyn Davis on the brief and orally), for the petitioner.


Orr & Reno, P.A., of Concord (Jeffrey C. Spear on the brief and orally), for the respondent.


HICKS, J. The petitioner, Wayne H. Kassotis, appeals a decision of the Superior Court (Kissinger, J.) dismissing his complaint, arising from the nonrenewal of his employment contract, against the respondent, the Town of Fitzwilliam (Town). We affirm.

The following facts are drawn from the trial court's order and the record, or are otherwise undisputed. The petitioner and the Town entered into an employment contract (contract) under which the petitioner agreed to serve as the Town's Chief of Police for a two-year term beginning April 1, 2011, and

ending April 1, 2013.  The contract provided that it would "continue in full force and effect from its expiration date until a new contract has been mutually agreed upon unless one party notifies the other party of its intent not to negotiate a renewal of the contract within one hundred and fifty (150) days of its expiration."

By letter dated November 1, 2012, the Board of Selectmen of the Town (Selectmen) provided the petitioner with notice that, "under the terms of the [contract], and in accordance with Section 14. Length of Contract, . . . we do not intend to negotiate a renewal of the contract."  The November 1, 2012, notice further provided:  "[T]his notice should not be construed to imply that we do not wish to continue your employment with the town.  It is not the current intention of the town to terminate your employment at this time."  By letter dated April 1, 2013, the contract's expiration date, the Selectmen provided a second notice stating, in pertinent part:

> This will confirm that the Board of Selectmen has decided not to renew [the contract].  Accordingly, your last day of employment with the Town will be April 1, 2013, at which point your employment with the Town will end due to expiration of the two year term of employment and non-renewal of the contract.

On May 15, 2013, the petitioner filed a complaint against the Town seeking, among other things, reinstatement as Chief of Police, damages, costs, and attorney's fees, for the Town's alleged failure to comply with RSA 105:2-a, which provides procedural protections to appointed chiefs of police who are "dismiss[ed]."  RSA 105:2-a (2013).  The Town moved to dismiss, arguing that, "[b]ecause the Petitioner was not dismissed, RSA 105:2-a does not apply, and he fails to state a claim for relief."  The trial court granted the Town's motion on the basis that "the provisions of RSA 105:2-a are inapplicable to the [Town's] decision not to renew the employment contract."  Specifically, it found, in pertinent part, that the petitioner "entered into a contract which provided that his employment relationship with the Town was for a set term.  The fact that the Town exercised its right not to renew that contractual relationship did not constitute a 'dismissal' under the statute."  The court denied the petitioner's motion for reconsideration.  This appeal followed.

"In reviewing the trial court's grant of a motion to dismiss, we consider whether the allegations in the [petitioner's] pleadings are reasonably susceptible of a construction that would permit recovery."  England v. Brianas, 166 N.H. ___, ___ (decided June 18, 2014).  "We assume that the [petitioner's] factual allegations are true and construe all reasonable inferences in the light most favorable to him."  Id.  "We need not, however, assume the truth of statements that are merely conclusions of law."  Id.  "We then engage in a threshold inquiry, testing the facts alleged in the pleadings against the

applicable law." Id. (quotation omitted). "We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief." Id. (quotation omitted).

On appeal, the petitioner argues that the trial court's dismissal order "wrongly holds that RSA 105:2-a . . . is inapplicable to the case . . . and therefore wrongly concludes that the Selectmen did not effectuate Chief Kassotis' 'dismissal' under the statute." He also argues, based upon "the significant statutory protections afforded appointed police chiefs under RSA 105:2-a" and "sound public policy regarding protecting appointed police chiefs from effective 'dismissal' by use of 'set term' contracts," that "the two year term of [the contract] must be disregarded" and he "should be reinstated" as police chief.

A determination of whether the court erred requires that we examine the language of RSA 105:2-a. "We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Town of Newbury v. N.H. Fish & Game Dep't, 165 N.H. 142, 144 (2013) (quotation omitted). "When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used." Id. (quotation omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. (quotation omitted). "We also interpret a statute in the context of the overall statutory scheme and not in isolation." Id. (quotation omitted). "We review issues of statutory interpretation de novo." Id.

RSA 105:2-a provides, in pertinent part:

[E]ach chief of police . . . of any city or town who is appointed rather than elected . . . shall be subject to suspension without pay or dismissal only for cause, and after he or she has been presented with a written specification of the reasons. Upon such suspension or dismissal, he or she shall be entitled to a hearing, on the merits and reasonableness of the action, in superior court in the county in which the municipality is located, provided that he or she petitions the clerk of the superior court for such a hearing within 45 days of his or her suspension or dismissal. The court shall have the power to affirm, modify, or negate such suspension or dismissal, based upon its findings.

RSA 105:2-a. Because the statute does not define "dismissal," id., we will construe the term according to its "common and approved usage." Town of Bartlett Bd. of Selectmen v. Town of Bartlett Zoning Bd. of Adjustment, 164 N.H. 757, 761 (2013) (quotation omitted); see also Town of Barrington v. Townsend, 164 N.H. 241, 246 (2012). Black's Law Dictionary defines

3

"dismissal," in relevant part, as "[a] release or discharge from employment." Black's Law Dictionary 537 (9th ed. 2009). Webster's Third New International Dictionary similarly defines "dismiss," in relevant part, as "to send or remove from employment." Webster's Third New International Dictionary 652 (unabridged ed. 2002).

The petitioner argues that "[t]he Fitzwilliam Selectmen's decision neither to renew the Chief Contract nor to negotiate a new contract constituted a 'dismissal' under RSA 105:2-a . . . [,] thereby affording [him] the substantial, procedural protections" of the statute. He argues that, "[b]ut for the notices given by the Selectmen [on November 1, 2012, and on April 1, 2013], [he] would have continued to serve as Fitzwilliam Police Chief." In particular, he argues that "[t]he effect of the latter notice from the Selectmen (the 04/01/2013 letter) was to 'remove' or to 'discharge' [him] from his 'service' or his 'employment,'" thereby constituting a dismissal under the statute, "in light of the common dictionary definition of the term." (Citation omitted.)

The Town argues that it did not dismiss the petitioner, but "[i]nstead . . . exercised its right — plainly provided in the Contract — to elect not to negotiate a new contract." As support for this argument, it cites cases from other jurisdictions holding, in the context of employment contract nonrenewal, that "[a] dismissal is not the same as a nonrenewal of a contract." Laurano v. Superintendent Schools of Saugus, 945 N.E.2d 933, 934 (Mass. 2011) (quotation omitted) ("The decision not to rehire a teacher on the expiration of his or her term of employment cannot be equated to dismissal of a teacher during his or her term of employment.").

We agree with the Town. While we need not here define the precise parameters of "dismissal" as used in RSA 105:2-a, we conclude that a definition encompassing the Town's nonrenewal of the petitioner's expiring term contract "is not consistent with the plain and ordinary meaning of the word." State v. Thiel, 160 N.H. 462, 466 (2010). We note that courts in other jurisdictions are in accord. For example, in Brown v. Independent School District No. I-06, 974 F.2d 1237 (10th Cir. 1992), the United States Court of Appeals for the Tenth Circuit interpreted an analogous Oklahoma statute mandating that certain employees of boards of education be "subject to . . . termination only for cause." Brown, 974 F.2d at 1239 (quotation omitted). In determining whether the statute's protections applied to covered employees whose annual contracts were not renewed, the court held, as a matter of law, that, "in the context of the language of [the statute], failure to renew is not the equivalent of an affirmative act of termination." Id. at 1240. Accord Chijide v. Manilaq Ass'n of Kotzebue, 972 P.2d 167, 172 (Alaska 1999) (holding that nonrenewal of plaintiff's year-to-year contract did not constitute "fir[ing] her for cause," and that internal communication regarding the nonrenewal "[did] not convert the non-renewal into a dismissal for cause"); Hicks v. KNTV Television,

Inc., 73 Cal. Rptr. 3d 240, 249 n.4 (Ct. App. 2008) ("[P]laintiff was not terminated in the generally understood sense of that word. Plaintiff's contract expired. Plaintiff's expectation that the contract would be renewed does not mean that he was discharged. His employment ended by operation of the contract."); Cannon County Bd. of Educ. v. Wade, No. M2006-02001-COA-R3-CV, 2008 WL 3069466, at *10 n.14 (Tenn. Ct. App. July 31, 2008) ("The non-renewal of an untenured teacher's contract is not . . . the same as a termination or dismissal. Generally applicable rules of contract law distinguish between a failure to renew a contract and a termination of that contract during its term, and those rules apply to employment contracts.").

Accordingly, we conclude, as a matter of law, that RSA 105:2-a does not apply to the Town's nonrenewal of the petitioner's employment contract. See Atwood v. Owens, 142 N.H. 396, 399 (1997).

Finally, because we conclude that RSA 105:2-a is clear on its face, we decline to address the petitioner's further arguments, based upon legislative intent and public policy, that RSA 105:2-a's "significant statutory protections" warrant us to "disregard[]" the contract's two-year term. Cf. Appeal of Coos County Comm'rs, 166 N.H. ___, ___ (decided June 18, 2014) ("Because the statute is clear on its face, we decline to address the [petitioner's] further arguments . . . based upon legislative intent or public policy."). Such analysis would require us to look beyond the text of the statute — which does not limit the enforceability of term contracts — in order to "consider what the legislature might have said or add language that the legislature did not see fit to include." Town of Newbury, 165 N.H. at 144 (quotation omitted).

Affirmed.

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.