NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

U.S. Court of Appeals for the First Circuit
No. 2013-825


UNITED STATES OF AMERICA

v.

RYAN HOWE

Argued: June 26, 2014
Opinion Issued: November 13, 2014


John P. Kacavas, United States Attorney (Seth R. Aframe, Assistant United States Attorney, on the brief and orally), for the United States of America.


Behzad Mirhashem, assistant federal defender, of Boston, Massachusetts, and Jeffrey S. Levin, assistant federal defender, of Concord (Mr. Mirhashem and Mr. Levin on the brief, and Mr. Mirhashem orally), for the defendant.


Joseph A. Foster, attorney general (K. Allen Brooks, senior assistant attorney general, on the brief), for the State of New Hampshire, as amicus curiae.

David J. Widi, Jr., self-represented, by brief, as <u>amicus</u> <u>curiae</u>.


HICKS, J.  Pursuant to Supreme Court Rule 34, the United States Court of Appeals for the First Circuit (<u>Lynch</u>, C.J.) certified to us the following question:

> Under sections 500-A:7-a(V) and 651:5 of the New Hampshire Revised Statutes and the undisputed facts of this case, is a felon whose conviction is eligible for annulment (that is, not categorically disqualified from jury service) but who has not applied for or received an annulment of that conviction qualified to sit as a juror?

We respond in the affirmative.

The First Circuit's order provides the following facts.  The defendant, Ryan Howe, was indicted under federal law in August 2012 for possession of a firearm by a felon, <u>see</u> 18 U.S.C. § 922(g)(1) (2012), based upon a prior state felony conviction.  He moved to dismiss that count on the ground that he was not a felon under section 922(g)(1) pursuant to an exception provided in 18 U.S.C. § 921(a)(20).  <u>See</u> 18 U.S.C. § 921(a)(20) (2012).  Section 921(a)(20) provides, in part, that "[a]ny conviction which has been expunged, or set aside or for which a person . . . has had civil rights restored shall not be considered a conviction for purposes of this chapter."  <u>Id</u>.  The First Circuit has held that "the civil rights that must be restored to trigger the exception [in section 921(a)(20)] are the rights to vote, to hold public office, and to serve on a jury." <u>United States v. Estrella</u>, 104 F.3d 3, 5-6 (1st Cir. 1997).  The United States concedes that the defendant's rights to vote and to hold public office were restored by operation of state law before the date of the federal offense, September 15, 2011.

The parties disagree as to whether the defendant was eligible, as of September 15, 2011, to serve on a jury under our juror qualification statute. <u>See</u> RSA 500-A:7-a, V (2010) (amended 2014).  RSA 500-A:7-a, V provides:  "A juror shall not have been convicted of any felony which has not been annulled or which is not eligible for annulment under New Hampshire law."  The United States District Court for the District of New Hampshire (<u>DiClerico</u>, J.) adopted the defendant's reading of RSA 500-A:7-a, V and dismissed the felon in possession charge.  The United States appealed to the First Circuit, which certified to us the above question.

Responding to the certified question requires us to engage in statutory interpretation.  "We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole."  <u>Town of Newbury v. N.H. Fish & Game Dep't</u>, 165 N.H. 142, 144 (2013) (quotation omitted). "When examining the language of the statute, we ascribe the plain and

ordinary meaning to the words used." Id. (quotation omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. (quotation omitted). "We also interpret a statute in the context of the overall statutory scheme and not in isolation." Id. (quotation omitted). "Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." State v. Guay, 164 N.H. 696, 700 (2013) (quotation omitted).

The United States, as well as both amici curiae, correctly note that RSA 500-A:7-a, V should be read in conjunction with the statute governing annulments, RSA 651:5 (Supp. 2011) (amended 2012, 2013, 2014), as they are related in subject-matter. See Bradley v. City of Manchester, 141 N.H. 329, 334-35 (1996) (noting that "all statutes upon the same subject-matter are to be considered in interpreting any one of them" (quotation omitted)). The United States and the amici curiae, however, offer differing interpretations of how RSA 651:5's provisions tie into the structure of RSA 500-A:7-a, V.

RSA 651:5 sets forth both procedural prerequisites and categorical bars to obtaining annulments. Thus, for instance, RSA 651:5, III provides, in part, that "[e]xcept as provided in . . . paragraphs V and VI," a person may petition for annulment when he or she: (1) "has completed all the terms and conditions of the sentence"; and (2) "has thereafter been convicted of no other crime," except for certain motor vehicle offenses, for the period of time thereafter specified for certain categories or levels of offense. RSA 651:5, III (Supp. 2010). Paragraph IV provides that "[i]f a petition for annulment is denied, no further petition shall be brought more frequently than every 3 years thereafter." RSA 651:5, IV (2007). Paragraphs V and VI set forth a categorical bar to annulment for certain offenses. RSA 651:5, V (2007) (amended 2014), VI (2007). At the time of the defendant's alleged violation of 18 U.S.C. § 922(g)(1), paragraph V stated: "No petition shall be brought and no annulment granted in the case of any violent crime, of any crime of obstruction of justice, or of any offense for which the petitioner was sentenced to an extended term of imprisonment under RSA 651:6." RSA 651:5, V. The offenses constituting "violent crime[s]" for purpose of the annulment statue and the definition of the term "crime of obstruction of justice" are set forth in paragraphs XIII and XIV, respectively. RSA 651:5, XIII, XIV (2007). Paragraph VI applies "[i]f a person has been convicted of more than one offense" and provides, among other things, that "no petition for annulment shall be brought and no annulment granted . . . [i]f annulment of any part of the record is barred under paragraph V." RSA 651:5, VI.

The United States contends that "the 'which is not eligible for annulment under New Hampshire law' clause [in RSA 507-A:7-a, V] bars from jury service those who may not participate in the annulment process because they do not satisfy the threshold [temporal] eligibility requirements." The State, on the

3

other hand, reads the "not eligible" clause as referring to the categorical bar of RSA 651:5, V and VI, and considers the procedural requirements of RSA 651:5, I through IV to be subsumed within the "actually . . . annulled" clause. Widi contends that the eligibility contemplated by RSA 500-A:7-a, V does not include the "the temporal requirements for petitioning for annulment."

We need not determine which, if any, of these proposed constructions are correct in order to answer the certified question. Whatever RSA 500-A:7-a, V means by "not eligible for annulment," the United States concedes that "there is no dispute that the defendant's conviction is eligible for annulment under New Hampshire law." Thus, the only question before us is: Given that the defendant, despite that undisputed eligibility, has not obtained annulment of his conviction, is he nevertheless qualified to serve as a juror?

The United States argues that "[t]he plain language of the juror qualification statute precludes from jury service a person with an unannulled felony conviction, even if the conviction is eligible for annulment under New Hampshire law." The United States focuses upon the statute's use of the term "or," which, it contends "indicates the disjunctive." It argues:

> [T]he statute establishes a result – disqualification from jury service ("no juror shall") – and creates two conditions, either of which triggers the disqualification result. These conditions are: (1) the presence of a felony which has not been annulled "or" (2) the presence of a felony which is not eligible for annulment under New Hampshire law.

(Emphasis added.) Such a reading is consistent with our interpretation of other statutes written in the disjunctive. See, e.g., Unit Owners Assoc. of Summit Vista v. Miller, 141 N.H. 39, 45 (1996) (concluding that "the use of the disjunctive 'or' [in the damages provision of the Consumer Protection Act, see RSA 358-A:10 (2009)] manifests a clear intent to award multiple damages for either knowing or willful acts"); Welts' Case, 136 N.H. 588, 591-92 (1993) (noting that attorney professional conduct rule establishing misconduct where attorney's "conduct involve[ed] dishonesty, fraud, deceit or misrepresentation," is disjunctive and concluding, therefore, that "[a] finding of misrepresentation alone constitutes misconduct" (quotation omitted)).

The defendant, on the other hand, argues for a construction of RSA 500-A:7-a, V under which, "if a conviction has not been annulled, but is eligible for annulment under New Hampshire law, then that conviction does not disqualify a person from jury service." The defendant contends that "the statute excludes from jury service only persons with felony criminal convictions of a specified status. If a felony conviction has been annulled, the person is not disqualified. If a felony conviction is eligible for annulment, the person is not disqualified."

4

In essence, the defendant's construction states the provision in positive form, dispensing with the double negative by deleting the successive "nots." He thereby concludes that a juror is qualified to serve if he "shall . . . have been convicted of any felony which has . . . been annulled or which is . . . eligible for annulment under New Hampshire law." RSA 500-A:7-a, V.

The United States protests that "this is not what the statute says." It asserts that the defendant "rewrite[es] the statute to convert it from a law describing the conditions under which someone is disqualified from jury service into a law describing the conditions under which someone's right to jury service is restored." Such a construction, the United States maintains, conflicts with our policy of interpreting "legislative intent from the statute as written" and our policy that we "will not consider what the legislature might have said or add language that the legislature did not see fit to include." Strike Four v. Nissan N. Am., 164 N.H. 729, 739 (2013) (quotation omitted).

Notwithstanding the authority of these interpretive rules, the defendant's elimination of the double negative from the statute also has some support as a method of statutory construction. See, e.g., Independent Bankers Ass'n of America v. Clarke, 743 F. Supp. 687, 690 (W.D. Mo. 1989) (noting that "the negative language used in [a state statute dealing with savings and loan associations] amounts to an affirmative grant of branching authority because of the double negative, i.e., 'no association may establish . . . without' can be read as 'an association may establish . . . with'"), aff'd, 917 F.2d 1126 (8th Cir. 1990); State v. Myers, 621 N.E.2d 881, 884 (Ohio Ct. App. 1993) (noting that "[t]he terms 'no' and 'without' used in the same [statutory] clause create a double negative, which gives the provision a positive meaning"). The defendant contends that his "construction comports with the plain meaning of 'eligibility for annulment'" because "[a] conviction is eligible for annulment if it qualifies for annulment, but has not yet been actually annulled." He argues that "[o]ne clause [of the statute] refers to an inchoate state – eligibility for annulment – while another clause refers to an actualized state – completed annulment." Because "[o]ne state ripens into the other state," he contends, both states cannot exist simultaneously. He notes that both clauses must "be given meaning and effect," and asserts that both are necessary, because the second clause, regarding eligibility for annulment, "would not cover those convictions that have been annulled."

The United States, on the other hand, disputes that the two clauses in RSA 500-A:7-a, V describe "inchoate" and "actualized" states that can never coexist. It posits two circumstances in which "a prospective juror could have an annulled conviction which still is ineligible for annulment under New Hampshire law": (1) an out-of-state conviction that was annulled in the convicting state but which is ineligible for annulment under New Hampshire law; and (2) a New Hampshire conviction "erroneously annulled" by a New

5

Hampshire court. Citing these circumstances, the United States maintains that under its interpretation, each clause in RSA 500-A:7-a, V has independent meaning.

We conclude that both the United States' and defendant's proffered constructions are reasonable. Accordingly, because RSA 500-A:7-a, V's "language is subject to more than one reasonable interpretation, we will resolve the ambiguity by determining the legislature's intent in light of legislative history." Appeal of Naswa Motor Inn, 144 N.H. 89, 90 (1999).

RSA 500-A:7-a was enacted in 1998, originating as House Bill 616-FN. See Laws 1998, 237:5. As introduced in January 1997, HB 616-FN contained the following provision: "V. A juror shall not have been convicted of any felony which has not been annulled, or of any misdemeanor involving a crime of moral turpitude which has not been annulled." House Bill 616-FN, available at http://gencourt.state.nh.us/SofS_ Archives/1998/house/HB616H.pdf. The bill was referred to the Judiciary and Family Law Committee, N.H.H.R. Jour. 89 (1997), which reported that the bill ought to pass with amendment; specifically, an amendment striking section V. N.H.H.R. Jour. 267 (1997). The bill as amended was passed by the House and referred to the House Finance Committee. Id.

Following an inexpedient to legislate vote by the House Finance Committee, N.H.H.R. Jour. 620 (1997), the bill was re-referred to the Judiciary and Family Law Committee, which again reported that the bill ought to pass with amendment. N.H.H.R. Jour. 86 (1998). The relevant amendment for our purposes is the reinsertion of section V in the following form: "V. A juror shall not have been convicted of any felony which has not been annulled or which is not eligible for annulment under New Hampshire law." Id. The statement by Representative Janet G. Wall for that committee reads as follows:

> The committee recognizes the importance of having a jury of one's peers and that jury pools have been dwindling. In an effort to rectify the problems, the committee studied the "Report of the Superior Court Reform Study Committee" which came out on August 15, 1997, and worked with the sponsor to reach a reasonable conclusion. The amendment allows for a master blend of drivers' licenses and voting checklists, takes away all exemptions from serving, and disallows felons whose convictions have not been annulled or whose convictions are not eligible for annulment. The committee agreed unanimously on the bill as amended.

Id.

6

The Report of the Superior Court Reform Study Committee, to which the House Committee on Judiciary and Family Law's report referred, stated, in pertinent part:

> There is currently no statute in New Hampshire which prohibits . . . convicted felons . . . from sitting on a jury. . . . Convicted felons are . . . eligible for service under current law.  While there are degrees of felonies and varying passages of time from conviction, a standard policy regarding felony convictions should be enacted to bring some certainty to this particular matter.
>
> . . .
>
> <u>The committee recommends that legislation be enacted . . . to prohibit convicted felons from jury service who are not eligible to have their convictions annulled</u>.  The committee feels that convicted felons who are eligible for annulment are of sufficient rehabilitation to permit their service on juries, and that those who cannot receive annulments ought not to be allowed the privilege of service.

Report of the Superior Court Jury Reform Study Committee 11 (August 15, 1997).

Following its passage by the House, <u>N.H.H.R. Jour.</u> 236 (1998), HB 616-FN was introduced in the Senate and referred to the Senate Committee on Judiciary, <u>N.H.S. Jour.</u> 72 (1998).  Representative David Mittleman, the bill's prime sponsor, addressed the committee, in relevant part, as follows:

> The third thing that the bill does, it clarifies when a felon can serve on a jury.  When we move to a system of choosing jurors by driver's licenses, a number of county prosecutors saw more and more felons arriving in the jury pools.  It just so happens that felons tend to drive more so than they tend to vote.
>
> What this bill does, it represents compromise between some various factions in the House.  But it says, " . . . if you've been convicted of any crime, a felony in particular, that if you are not eligible to have your conviction annulled, then you are not eligible to serve on a  jury."  For example, there are certain felonies you cannot have your conviction annulled for ten years, until after you've served your sentence.  This would track that pattern down, so that if you can't get it annulled, you can't serve on a jury.  There is no right to sit on a jury, rather it's just a duty that we impose upon a citizen.

Transcript of Senate Committee on Judiciary, available at N.H. Supreme Court, Joint App. at 29, No. 2013-0825. The bill passed in the Senate. N.H.S. Jour. 1082 (1998).

The defendant argues this legislative history supports the District Court's interpretation of RSA 500-A:7-a, V. He notes, among other things, that the relevant version of RSA 500-A:7-a, V was proposed by the House Committee on Judiciary and Family Law "on the heels of the Superior Court committee's report" and acknowledged that report. The United States counters that although the Superior Court committee "recommended a rule disqualifying jurors whose convictions were not eligible for an annulment," nothing in the legislative history "suggest[s] that the actual juror qualification bill was drafted to enact this recommendation." In fact, the United States argues, "the House Committee rejected the Study Committee language and added language disqualifying those with unannulled convictions. The defendant takes no account for the textual change made to the Study Committee Report recommendation."

The United States' argument assumes that the actual annulment clause was added to eligibility language adapted from the superior court study committee's recommendation. The legislative history, however, indicates the opposite progression. The initial version of section V, which determined juror qualification based upon whether the prospective juror had actually had any disqualifying conviction annulled, failed to be recommended for passage by the House Committee on Judiciary and Family Law. N.H.H.R. Jour. 267 (1997). An amended version, without any convicted felon disqualification, failed to be approved by the House Finance Committee. N.H.H.R. Jour. 620 (1997). The version that was eventually enacted revived the actual-annulment component and added to it a component referencing eligibility for annulment. See Laws 1998, 237:5; see also 2A N. Singer & J.D. Singer, Statutes and Statutory Construction § 48:4, at 562-63 (7th ed. 2007) (stating that "the history of events during the process of enactment, from its introduction in the legislature to its final validation, has generally been the first extrinsic aid to which courts have turned in attempting to construe an ambiguous act" and noting that "[l]egislative history can . . . consider part of a statute that never came into existence" because, for instance, "the language under question was rejected by the legislature"); Chesapeake Industries v. Comptroller, 475 A.2d 1224, 1226-27, 1229 (Md. Ct. Spec. App. 1984) (discerning legislative intent from bill that failed to make it through Ways and Means Committee).

The United States contends that the purpose of the disputed language is to function as a safety net of sorts, catching: (1) convictions that were imposed and subsequently annulled out-of-state, but which would not be eligible for annulment under New Hampshire law; and (2) erroneously annulled New Hampshire convictions. It backs its argument with both textual support (contending that its construction "provides an explanation for the legislature's

8

deliberate use of 'under New Hampshire law''') and policy reasons (contending that "[t]he legislature presumably would not have favored allowing someone on a New Hampshire jury who was convicted of such a serious crime that annulment was not an option under New Hampshire law"). The proffered textual support reprises a plain meaning analysis, which, as we have explained above, could reasonably support the competing constructions, thereby prompting us to consult legislative history; the proffered policy reasons are found nowhere in the legislative history.

The defendant, on the other hand, argues that "after a statute that conditioned jury service on actual annulment failed, the current version was proposed to ensure a sufficiently broad jury pool, based on a legislative judgment that a person who is eligible for annulment has been sufficiently rehabilitated to serve as a juror." This argument is consistent with the legislative history. Although RSA 500-A:7-a, V added a disqualification from jury service that had not previously existed in New Hampshire law, and in that way shrank the universe of available jurors, the legislative history indicates that RSA 500-A:7-a was also intended to "rectify the problem[]" of dwindling jury pools. N.H.H.R. Jour. 86 (1998). Thus, it is reasonable to read the addition of the eligible-for-annulment language as an attempt to broaden the pool of potential jurors to include those convicted felons who, although not having actually obtained an annulment, were nevertheless thought to have been "sufficiently rehabilitated to serve as a juror." This interpretation is supported by the legislative history showing that prior to adding the eligible-for-annulment language, the House Committee on Judiciary and Family Law consulted a Superior Court Reform Study Committee report that equated "sufficient rehabilitation to permit their service on juries" with eligibility for annulment, not actual annulment. Report of the Superior Court Jury Reform Study Committee, supra at 11. We conclude that the defendant's interpretation of RSA 500-A:7-a, V is supported by the statute's legislative history.

The United States nevertheless argues that the defendant's construction of the statute would lead to an absurd result "where two felons committed the same crime and engaged in the same post-conviction conduct." It explains:

> If one of these felons sought but was denied an annulment, he would be barred from jury service because his conviction would be ineligible for annulment for three years under the New Hampshire annulment statute. Meanwhile, the felon who avoided the annulment system entirely would be allowed to sit as a juror. There is no logical reason that these two felons should be treated differently, and yet this is precisely the result that defendant's construction would produce.

9

Although such a result may appear counterintuitive, we note that RSA 500-A:7-a deals only with the initial qualification of jurors – their eligibility to be in the jury pool. Individual jurors are still subject to challenge at the jury selection stage. Prospective jurors may be examined on voir dire by the court in both civil and criminal cases, RSA 500-A:12 (2010), :12-a (2010) (amended 2014), and by counsel in civil cases "in order to enable counsel to intelligently exercise both peremptory challenges and challenges for cause," RSA 500-A:12-a; see Laws 2014, 40:1 (amending RSA 500-A:12-a to apply to criminal as well as civil cases, effective January 1, 2015). Presumably, a felon who has not sought an annulment of his conviction would be scrutinized by the court and counsel for suitability for jury service. Thus, the absurd result posited by the United States may be more theoretical than real.

Finally, we note that the legislature amended RSA 500-A:7-a in 2014. See Laws 2014, 204:33. Section V, as amended, reads: "A juror shall not have been convicted of any felony unless the conviction has been annulled." Id. This amendment does not affect our interpretation of RSA 500-A:7-a in its prior form. Accordingly, we answer the certified question in the affirmative.

Remanded.

DALIANIS, C.J., and LYNN, CONBOY, and BASSETT, JJ., concurred.