Andy FIALA, Appellant,

v.

Lori RAINS, Appellee.

No. 93–337.

Supreme Court of Iowa.

July 27, 1994.

Benjamin W. Blackstock and Eric C. Syverud of Blackstock Law Offices, Cedar Rapids, for appellant.

John K. Von Lackum of Elderkin & Pirnie, Cedar Rapids, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

## I. Introduction

This appeal arises out of appellant Andy Fiala's negligence suit against appellee, Lori Rains, for damages sustained when he was physically beaten by a third person in her home. At the close of Fiala's evidence, the trial court granted Rains's motion for directed verdict and entered judgment in her favor. Fiala appeals from that judgment and requests that this court determine whether Rains owed Fiala a legal duty upon which Fiala's negligence claim could be grounded. We affirm.

## II. Standard of Review

When reviewing a trial court's decision on a motion for directed verdict, we review the evidence in the same light as the district court and determine whether a jury question was created. *Toney v. Casey's Gen. Stores, Inc.*, 460 N.W.2d 849, 852 (Iowa 1990). The trial court must view the evidence in the light most favorable to the party against whom the motion is made. *Id.* Even if the facts are undisputed, if reasonable minds could draw different inferences from the evidence, the case should be submitted to the jury. *Id.* We also review the district court's decision for errors at law. Iowa R.App. P. 4.

## III. Facts

Shortly after midnight on the morning of October 7, 1990, Matthew Moeller, Rains's disgruntled boyfriend, broke into her home and severely beat Fiala, who was Rains's house guest that evening. The events leading up to the altercation are somewhat in dispute.

Moeller and Rains had a continuously stormy relationship as lovers with Moeller living off and on at Rains's house seventy percent of the time. Several violent incidents had occurred between them. Typically, arguments would occur with Moeller becoming physically abusive toward Rains. On a number of occasions Moeller slapped Rains, shoved her around, and attempted to strangle her. After each of these episodes it was usually not long before Moeller and Rains made up—and the cycle began again.

In March 1990, Moeller became so violent that Rains locked herself in her bathroom. Moeller threatened to commit suicide and to prove his intentions cut himself with a knife and smeared blood underneath the bathroom door so Rains could see it from inside the bathroom. Rains refused to open the door, so Moeller broke it down, dragged Rains out of the bathroom and pushed her around. He then went into the kitchen to get some pills with which he threatened to kill himself by overdose. Rains called 911 on the telephone and the altercation ended.

On another occasion, a drunk Moeller refused to let Rains out of the car he was driving so she could get into her car and pick up her son. She attempted to get out of the car and into her car, but Moeller, a former wrestler, dragged her back into the car and kept her confined in a headlock. He drove the car while holding Rains in a headlock position. As a result, he crashed into a utility pole and was arrested for drunk driving.

In April 1990, at a time when Rains and Moeller were apparently in a discordant phase of their relationship, they and Andy Fiala happened to be at a local Cedar Rapids tavern called DeSoda's. Although the testimony is conflicting regarding who asked whom to dance, it is clear that Fiala and Rains danced together. Upon seeing this, Moeller sent an envoy to tell Fiala that he did not want Fiala to have any contact with Rains. The situation escalated into a scuffle between Moeller and Fiala; the record is unclear as to who the aggressor was. Several weeks later Moeller apologized to Fiala and said that he had no hard feelings toward Fiala. Fiala believed this and did not harbor any hostile feelings toward Moeller.

On the afternoon of October 6, 1990 Rains and Moeller ate lunch together. They had slept together the night before and had an argument the next morning. At lunch, Moeller demanded to meet with Rains that evening. Rains, in order to appease Moeller,

agreed to meet him, despite her plans to meet friends at DeSoda's that evening. Rains went out with her girlfriends anyway and ran into Fiala at the bar.

Fiala, who had met his girlfriend at DeSoda's, struck up a conversation with Rains and another woman who came to the bar with Rains and who also happened to be Fiala's cousin. The three, along with another of Rains's girlfriends, decided to move to another bar, the Irish Democrat, and meet for beers and conversation. At the same time, Rains also invited Fiala and the two women to her house for further socializing after stopping at the Irish Democrat. Both Rains and Fiala testified that there was nothing intimate or sexual going on between them that evening. It was to be merely a social gathering at Rains's home.

Rains asked Fiala to drive and they left DeSoda's for the Irish Democrat. At the Irish Democrat the other two women did not show up. Fiala and Rains stayed long enough to drink one beer and then left to meet at Rains's home.

Fiala drove Rains to her home and the two went inside. The two women friends were not there. Fiala and Rains had not been inside for more than five minutes when Moeller arrived and broke down the door. Moeller felt he had been stood up by Rains that night and was lurking outside Rains's home. When he saw Fiala and Rains get out of Fiala's van and enter her home he assumed the two were going to engage in intimacies. Inside the home he grabbed Rains by the throat and then pushed her to the floor. Moeller turned his attention to Fiala who put his hands in the air and attempted to assure Moeller that nothing had happened between him and Rains—that he had simply given her a ride home. Moeller did not believe Fiala. Instead he kicked Fiala in the face and a fight ensued. Moeller forced Fiala to the floor and kicked him repeatedly in the head, knocking Fiala unconscious. Fiala was brought by ambulance to the hospital where he was treated for severe head injuries.

Fiala sued Moeller and Rains for damages in tort. Fiala settled his lawsuit against Moeller. In his petition against Rains, Fiala claims damages for negligence based on the background scenario of Rains's relationship with Moeller and her knowledge of his jealous and violent nature. First, Fiala claims he was owed a duty of care by Rains arising from the danger she knew or should have known existed from Moeller. Second, Fiala claims Rains breached his duty of care to Fiala under the theory of premises liability.

The district court granted Rains's motion for directed verdict. It held Rains owed Fiala no legal duty under the evidence presented, even when viewed in a light most favorable to Fiala.

IV. Duty of Care to not Expose Person to Danger

■ As a general rule, conduct that produces an unreasonable danger of injury to others can constitute negligence. *Rinkleff v. Knox,* 375 N.W.2d 262, 265 (Iowa 1985). However, underlying this general rule is the axiom that in order for there to be negligence a recognized legal duty must exist that is owed the injured party by the alleged wrongdoer. *Kelly v. Sinclair Oil Corp.,* 476 N.W.2d 341, 354 (Iowa 1991); *see also* W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 53, at 356 (5th ed. 1984). "[A]ctionable duty is defined by the relationship between individuals; it is a legal obligation imposed upon one individual for the benefit of another person or particularized class of persons." *Sankey v. Richenberger,* 456 N.W.2d 206, 209 (Iowa 1990).

In addition, "the relationship giving rise to a duty of care must be premised on foreseeability of harm to the injured person." *Id.* at 209–10. "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v. Long Island Ry. Co.,* 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928). "The law's standard is reasonable foresight, not prophetic vision." *Bain v. Gillispie,* 357 N.W.2d 47, 49 (Iowa App.1984).

■ Fiala contends Rains owed him a "duty to not expose him to a danger she knew, or should have known, when she invited him into her house." Fiala cites as support for his argument the Restatement (Sec-

ond) of Torts sections 302, 302A, and 302B. Those sections provide that certain acts or omissions may be negligent if the alleged wrongdoer realizes or should realize that the conduct involves an unreasonable risk of harm to another through the negligent, reckless, or criminal conduct of a third person. *See* Restatement (Second) of Torts §§ 302–302B.

Rains counters that she owed Fiala no legal duty. She argues that Moeller's conduct was not reasonably foreseeable. Moreover, she contends she did no affirmative act that created an unreasonable danger to Fiala of which she knew or should have known.

■ Generally, a person has no duty to prevent a third person from causing harm to another. *Morgan v. Perlowski*, 508 N.W.2d 724, 726 (Iowa 1993); *Husker News Co. v. South Ottumwa Sav. Bank*, 482 N.W.2d 404, 407 (Iowa 1992); *Kelly*, 476 N.W.2d at 354; *Anthony v. State*, 374 N.W.2d 662, 668 (Iowa 1985); Restatement (Second) of Torts § 314 (1965). In cases involving a failure to take action we generally recognize a legal duty exists only if there is a special relationship between the parties. *Morgan*, 508 N.W.2d at 727; *Keller v. State*, 475 N.W.2d 174, 179 (Iowa 1991); *Kelly*, 476 N.W.2d at 354; *Anthony*, 374 N.W.2d at 68; *see also* Restatement (Second) of Torts § 314 cmt. a.

Fiala asserts that the district court and Rains's arguments missed the point of his propositions of law. He believes both mistakenly considered this to be a case of whether Rains had a duty to protect Fiala and a duty to control Moeller. He states that neither is the issue. Rather, the case centers on whether Rains had a duty to warn Fiala and whether she had a duty to not expose Fiala to danger. Although these may be obverse statements of the same idea, we do not base our analysis on these semantic differences and accept Fiala's issue formulation for purposes of deciding this case.

The evidence presented by Fiala is replete with incidents of violent behavior by Moeller. There are numerous times when Rains was involved so that she was well aware of Moeller's nature and propensities. Moeller testified that his temper was bad because Rains

would lie and manipulate him. He said Rains was "always screwing with my head." Rains had had another argument with Moeller on October 6 at lunch and had failed to meet him that night as she promised. From this and her prior experiences with Moeller Fiala argues that Rains knew of imminent danger. He says she failed to inform him of her fight with Moeller and of his intense jealousy. Thus, argues Fiala, the criminal acts by Moeller were reasonably foreseeable by Rains who by failing to warn and not expose Fiala to danger breached a duty of care owed to him. Fiala contends that these facts fit within the concept of the Restatement of Torts sections 302 and 302B. Further support is sought from *Pamela L. v. Farmer*, 112 Cal.App.3d 206, 169 Cal.Rptr. 282, 284 (1980) for the proposition that foreseeability turns on knowledge.

Notwithstanding these authorities, we do not believe the threshold has been reached with the evidence in this case to establish a legal duty of care so that the issue of foreseeability was submissible to the jury. No evidence was presented of threats to Fiala by Moeller or of any known actions by Moeller immediately preceding the assault that would alert Rains to a pending danger.

■ Moreover, the record is void of any evidence suggesting a special relationship existed between Fiala and Rains triggering a duty on the part of Rains to prevent Moeller from harming Fiala. Liability for nonfeasance is still largely confined to situations where there is some special relationship between the parties. *Keller*, 475 N.W.2d at 179–80; Restatement (Second) of Torts § 314 cmt. c (1965).

## V. Duty Owed Under Premises Liability

■ Fiala argues alternatively that a duty of care was owed by Rains under a premises liability theory. *See* 62 Am.Jur.2d *Premises Liability* § 45–48 (1990). He cites the Restatement (Second) of Torts section 344, cmt. f. We considered this argument in *Morgan v. Perlowski*, 508 N.W.2d 724, 727–28 (Iowa 1993) filed after the case at bar was briefed. In *Morgan*, we recognized the Restatement principle, citing our cases, that a duty of care

**390**

is owed by a possessor of land who holds it open to the public for business purposes to members of the public to protect them against physical harm caused by acts of third persons. We then held that the duty owed a social guest does not fall within the ambit of section 344 but is imposed under a narrower concept expressed in section 318. That section speaks of the duty of a possessor of land to control the conduct of licensees. No claim is made by Fiala that section 318 applies to this case. We hold that our decision in *Morgan* is dispositive of Fiala's premises liability claim against Rains.

The trial court correctly granted the motion for a directed verdict in favor of Rains and is affirmed.

**AFFIRMED.**

All Justices concur except NEUMAN, J., who concurs in result only.