NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2013-206


KENNETH ENGLAND

v.

MARIA BRIANAS

Argued:  April 3, 2014
Opinion Issued:  June 18, 2014


Waystack Frizzell, Trial Lawyers, of Colebrook (Jonathan S. Frizzell on the brief and orally), for the plaintiff.


Primmer, Piper, Eggleston & Cramer, PC, of Littleton (Gregory M. Eaton on the brief and orally), for the defendant.


DALIANIS, C.J.  The plaintiff, Kenneth England, appeals the order of the Superior Court (Vaughan, J.) dismissing his negligence action against the defendant, Maria Brianas.  He argues that the writ alleged facts showing that a legal duty was owed to him by the defendant.  We affirm.

The writ contains the following allegations.  For several months in 2009, the defendant and Allen Bryson had an intimate relationship, which ended when Bryson moved out of state.  After Bryson returned to New Hampshire in February 2010, he contacted the defendant several times, attempting to

resume their relationship; he "became enraged" when she refused. Although the defendant told Bryson that she did not believe that they were "compatible," he nevertheless persisted in an abrasive and angry manner. He also left an angry message on her telephone because he was upset that she would not return his calls, and, when she encountered him in a restaurant, he argued with her and used profanities. The defendant noticed tire tracks in her driveway that she suspected were from Bryson's truck and "felt that Bryson was always watching her, and occasionally she would see him following her in his car."

The plaintiff and the defendant met during the summer of 2008 and later began socializing and communicating through text messages. The defendant never told the plaintiff about her relationship with Bryson or his behavior after he returned to New Hampshire. On February 13, 2010, while they were together at the Eagles Club, the defendant invited the plaintiff to spend the night at her house. Both were unaware that Bryson had broken into the defendant's house through the basement and was waiting for her to return home. When the plaintiff left the defendant's living room to get a drink in the kitchen, Bryson stabbed him multiple times, causing serious injuries.

The plaintiff argues that the trial court should have found that special circumstances existed that would support a finding of a legal duty owed to him by the defendant and, therefore, should have denied the defendant's motion to dismiss. The defendant counters that the trial court was correct in granting her motion to dismiss because the plaintiff's writ of summons did not allege special circumstances or a special relationship sufficient to impose a duty to warn or protect the plaintiff from Bryson's assault.

In reviewing the trial court's grant of a motion to dismiss, we consider whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery. Plaisted v. LaBrie, 165 N.H. 194, 195 (2013). We assume that the plaintiff's factual allegations are true and construe all reasonable inferences in the light most favorable to him. Id. We need not, however, assume the truth of statements that are merely conclusions of law. Ford v. N.H. Dep't of Transp., 163 N.H. 284, 288 (2012). "We then engage in a threshold inquiry, testing the facts alleged in the pleadings against the applicable law." Signal Aviation Servs. v. City of Lebanon, 164 N.H. 578, 582 (2013) (quotation omitted). "We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief." Id. (quotation omitted).

To recover for negligence, the plaintiff must demonstrate that the defendant had a duty to the plaintiff, that she breached that duty, and that the breach proximately caused injury to the plaintiff. Pesaturo v. Kinne, 161 N.H. 550, 557 (2011). Absent the existence of a duty, the defendant cannot be liable

2

for negligence. Carignan v. N.H. Int'l Speedway, 151 N.H. 409, 412 (2004). "When charged with determining whether a duty exists in a particular case, we necessarily encounter the broader, more fundamental question of whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." Walls v. Oxford Management Co., 137 N.H. 653, 657 (1993) (quotation omitted). "In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same – to conform to the legal standard of reasonable conduct in the light of the apparent risk." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 53, at 356 (5th ed. 1984). Whether a duty exists in a particular case is a question of law, which we review de novo. Carignan, 151 N.H. at 412.

"[P]rivate persons have no general duty to protect others from the criminal acts of third persons." Walls, 137 N.H. at 656. "This rule is grounded in the fundamental unfairness of holding private citizens responsible for unanticipated criminal acts of third parties." Id. at 657. In certain limited circumstances, however, we have recognized such a duty. See Remsburg v. Docusearch, 149 N.H. 148, 154-55 (2003) (private investigator owes duty to third party where disclosure of information to client creates foreseeable risk of criminal misconduct against third party); Dupont v. Aavid Thermal Technologies, 147 N.H. 706, 713 (2002) (plaintiff sufficiently alleged facts establishing employer's duty to protect employee from imminent danger while at work); Iannelli v. Burger King Corp., 145 N.H. 190, 194 (2001) (teenagers' unruly behavior created unreasonable risk of injury to restaurant patrons, creating duty to protect patrons from assault); Marquay v. Eno, 139 N.H. 708, 717-18 (1995) (schools share special relationship with students, creating duty of reasonable supervision).

The plaintiff relies upon Dupont to support his argument that "special circumstances" existed that gave rise to a duty to warn. The facts in Dupont, however, are not analogous to those in this case. In Dupont, Robert Hilliard, who worked in a different department and on a different shift than did Raymond Dupont, confronted him at his work station. Dupont, 147 N.H. at 708. Two supervisors, suspecting that the confrontation might turn violent, escorted them out of the building. Id. After learning that Hilliard had a loaded handgun and after observing that the confrontation became heated, the supervisors did not call the police but, rather, ordered Dupont to return to work. Id. Hilliard requested more time with Dupont, which the supervisors allowed. Id. Hilliard shot and killed Dupont in the parking lot and, shortly thereafter, shot himself. Id. Based upon these specific facts – that the supervisors knew that Hilliard was armed and agitated, that there was a prior history of similar incidents of potential violence, and that the supervisors failed to take reasonable measures to prevent the attack – we concluded that the supervisors' alleged knowledge was sufficient to impose a duty upon the

employer to protect Dupont from Hilliard's attack. Id. at 714. Here, however, there are no allegations that the defendant knew that Bryson had a knife, that he had ever threatened to hurt the defendant or anyone else, or that he had ever threatened to break into the defendant's house. Consequently, the plaintiff's reliance upon Dupont is misplaced.

The plaintiff also cites Jobe v. Smith, 764 P.2d 771 (Ariz. Ct. App. 1988), as "empirical authority" for the proposition that "it is the possession of knowledge on the part of one party that a potentially dangerous situation exists – and is getting worse, not better – that creates the legal duty to warn another who may be harmed that the harm may occur." In Jobe, the plaintiff contended that the defendant asked him to come to her home to repair her refrigerator, knowing that her estranged boyfriend, who had a propensity for violence, was in the house, and aware of the risk that he would attack the plaintiff. Jobe, 764 P.2d at 771. When the boyfriend assaulted the plaintiff, the plaintiff sued the defendant for failing to warn him of the risk. Id. As the trial court in the instant case noted, Jobe "held that under 'certain circumstances' there may be a requirement to provide warnings about 'hidden perils on the premises' including the presence of a third person." See id. at 771-72 (finding duty to warn of "homicidal maniac" in bedroom based upon defendant's prior knowledge about assailant's violent tendencies). Here, the plaintiff concedes that the defendant did not know that Bryson had broken into her home. Thus, she was unaware of the "hidden peril on the premises."

We find the instant case more analogous to Fiala v. Rains, 519 N.W.2d 386 (Iowa 1994), and Patzwald v. Krey, 390 N.W.2d 920 (Minn. Ct. App. 1986). In Fiala, the defendant's disgruntled boyfriend broke into her home and severely beat the plaintiff, who was the defendant's house guest that evening. Fiala, 519 N.W.2d at 387. The defendant knew of the boyfriend's propensity for violence because, on several occasions, he had slapped, shoved, and attempted to strangle her. Id. On the night of the assault, the plaintiff gave the defendant a ride home from a bar. Id. at 388. They were unaware, however, that the boyfriend was lurking outside the defendant's home. Id. The boyfriend broke down the door, grabbed the defendant by the throat, and pushed her to the floor. Id. The boyfriend then attacked the plaintiff, kicking him repeatedly in the head, knocking him unconscious. Id. The plaintiff brought a negligence action against the defendant, contending that she owed him a "duty to not expose him to a danger she knew, or should have known, when she invited him into her house." Id. (quotation omitted). The court noted that the record was devoid of any evidence suggesting a special relationship existed between the plaintiff and the defendant that would establish a legal duty of care. Id. at 389. Finding no evidence that the boyfriend had ever threatened the plaintiff and no evidence of any action immediately preceding the assault that would have alerted the defendant to a pending danger, the court concluded that there was no legal duty of care. Id.

4

Similarly, in Patzwald, Rita Patzwald ended her three-year relationship with her boyfriend because of his erratic behavior, which included a physical assault. Patzwald, 390 N.W.2d at 921. After she broke off the relationship, he threatened to "get her" several times and left her picture, stabbed full of holes, in her front doorway. Id. (quotation omitted). Patzwald contacted the police on two occasions to report the continued harassment. Id. Sometime thereafter, while Patzwald was hosting a wedding reception for her daughter at her home, the former boyfriend appeared unexpectedly, firing a .22 caliber rifle indiscriminately into the crowd of guests, killing one and injuring three others. Id. The injured guests filed personal injury actions against Patzwald, alleging a duty on her part to warn them of the former boyfriend's potential criminal activity. Id. The court concluded that the plaintiffs "lacked the requisite special relationship that first must be found before a duty to warn may be imposed." Id. at 922. The court also determined that "no duty to warn should be imposed because [the former boyfriend] never made specific threats against any of the guests injured by him at the wedding reception." Id. Accordingly, the court held that Patzwald owed no obligation to the wedding guests to warn them of "a harm that was by any reasonable standard, unforeseeable." Id. at 923.

In contrast to the defendants in Fiala and Patzwald, both of whom were victims of physical abuse by the assailant, the defendant here was unaware of Bryson's propensity for violence. She knew only that he was upset because she had told him that they were incompatible, that he left her an angry message on her telephone, and that he used profanities when he saw her in a restaurant. This alleged conduct was insufficient, as a matter of law, to make Bryson's attack foreseeable such that the defendant had a duty to warn the plaintiff.

"The common law narrowly defines those responsible civilly for failure to prevent criminal assaults by third parties." Berry v. Watchtower Bible & Tract Soc., 152 N.H. 407, 415 (2005). Otherwise, "close friends, neighbors and extended family [would] find themselves at risk of civil liability for situations they did not create and over which they exercise no control." Id. Because we conclude that the defendant did not owe the plaintiff a duty to warn him "that she had a potentially dangerous stalker who had been harassing her," we uphold the trial court's grant of the defendant's motion to dismiss.

Affirmed.

CONBOY, LYNN, and BASSETT, JJ., concurred.

5