**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2014-0797, <u>Thomas N.T. Mullen & a. v. Public Service Company of New Hampshire & a.</u>, the court on July 16, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiffs, Thomas Mullen, Walter Lankau, Jr., and Owl Street Associates, LLC, d/b/a Owl's Nest Resort & Golf Club (Owl's Nest), appeal an order of the Superior Court (<u>MacLeod</u>, J.) dismissing their amended complaint against the defendants, Public Service Company of New Hampshire (PSNH), Northern Pass Transmission, LLC, and Northeast Utilities for failure to state a claim. The plaintiffs contend that the trial court erred by: (1) finding that they had not adequately pleaded their claims for unreasonable interference and encroachment on easements, fraudulent misrepresentation, and slander of title; (2) making "impermissible findings on material issues of fact that the trial court refused to allow plaintiffs to discover"; and (3) "refus[ing] to enforce Superior Court discovery rules."

At the outset, we note that the plaintiffs concede that they "lost Owl's Nest to foreclosure [after the trial court dismissed their claims]; therefore the demands for injunctive relief and quiet title are moot." We further note that, with respect to their claim for "unreasonable interference and encroachment on easements," the plaintiffs argue that "[t]he uncertainty of the Northern Pass plans and the potential impact on Owl's Nest is what ruined [their] business"; they have not asserted that the defendants in fact used the easements unreasonably at any time when the plaintiffs owned the burdened property. Because the plaintiffs do not claim that the defendants have used the easements unreasonably, but only that they will at some point, and because the plaintiffs concede that their claims for quiet title and injunctive relief are moot, we need not address whether the trial court erred by dismissing their claim for unreasonable interference and encroachment on easements. <u>Cf.</u> <u>Jolicoeur v. Conrad</u>, 106 N.H. 496, 498 (1965) ("It is well settled in this jurisdiction . . . that there can be no recovery for future damages unless there is evidence from which it can be found to be more probable than not that they will occur.").

Furthermore, to the extent that the plaintiffs argue that the defendants breached the easement by planning to install transmission-only lines, we note that they have not appealed the trial court's dismissal of that claim. Accordingly,

we decline to address it.  See State v. Blackmer, 149 N.H. 47, 49 (2003) (stating issues not raised in notice of appeal are not preserved for review).

In reviewing the trial court's grant of a motion to dismiss, we consider whether the allegations in the plaintiffs' pleadings are reasonably susceptible of a construction that would permit recovery.  England v. Brianas, 166 N.H. 369, 371 (2014).  We assume that the plaintiffs' factual allegations are true and construe all reasonable inferences in the light most favorable to the plaintiffs.  Id.  We need not, however, assume the truth of statements that are merely conclusions of law.  Id.  We then engage in a threshold inquiry, testing the facts alleged in the pleadings against the applicable law.  Id.  We will uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief.  Id.

The first count in the plaintiffs' amended complaint alleged fraudulent misrepresentation by PSNH.  The tort of intentional misrepresentation, or fraud, must be proved by showing that the representation was made with knowledge of its falsity or with conscious indifference to its truth and with the intention of causing another person to rely upon the representation.  Tessier v. Rockefeller, 162 N.H. 324, 332 (2011).  In order to withstand a motion to dismiss, a plaintiff cannot allege fraud in general terms, but must specifically allege the essential details of the fraud and the facts of the defendant's fraudulent conduct.  Id.

In this case, the plaintiffs alleged that during negotiations to replace two existing easements over the Owl's Nest property with a new easement, which led to a January 2007 easement deed (new easement), PSNH "assured [them] that the only plans for the right of way were to maintain the existing poles and that if new lines were ever installed, they would be mounted on H-shaped wooden poles like the ones that occupied the right of way for many years."  However, the plaintiffs did not allege facts that, when construed most favorably to them, would support an inference that PSNH knew this statement was false or was consciously indifferent to its truth at the time PSNH made it.

Instead, they alleged various events relating to high voltage direct current transmission (HVDC) that occurred before and after the execution of the new easement and involved entities other than PSNH.  These events included a 2008 power purchase agreement between a Northeast Utilities subsidiary and HQ Energy Services (US) and a 2008 Northeast Utilities petition to the Federal Energy Regulatory Commission (FERC), both of which the plaintiffs alleged were "developed over an extended period of time, a period plaintiffs believe pre-dated the [new] Easement Deed."  (Emphasis added.)  We agree with the trial court that these allegations do not establish that, at the time of the statement, "PSNH actually knew it would itself be involved in any HVDC transmission project, or that it actually knew of any specific route that would transverse its easement

2

over [the plaintiffs'] property," so as to satisfy the heightened pleading requirement for intentional misrepresentation.

The plaintiffs argue that the events alleged, involving entities other than PSNH and occurring before and after the new easement was executed, show that "planning [for an HVDC project] had to have been underway for a period pre-dating the [new] Easement Deed." (Emphasis added.) They state that their "claim rested on the belief that the HVDC project, eventually named the Northern Pass, was planned before the execution of the [new] Easement Deed." Regardless of whether the allegations would support an inference that there was planning "underway" for an HVDC project, we conclude that the allegations lack sufficient details of the fraud and the facts of the defendants' fraudulent conduct to satisfy the specificity requirement for pleading fraud. See Tessier, 162 N.H. at 332.

We disagree with the plaintiffs' assertion that the trial court made an improper finding of fact that no plan for an HVDC project existed at the time the new easement was executed. Rather, the trial court ruled that the plaintiffs failed to allege that "such specific plan [was] even proposed at the time the parties entered the Easement Deed." See Fischer v. Superintendent, Strafford County House of Corrections, 163 N.H. 515, 519 (2012) (stating interpretation of court order is question of law, which we review de novo). Even if the trial court "erroneously characterize[d] [the plaintiffs'] allegation that [sic] an April[ ] 2007[ ] presentation about the issues and opportunities for the import of HVDC power from Canada as an 'admission' that that date was the 'earliest' that Northeast Utilities was 'aware' of import 'opportunities,'" this does not rectify the plaintiffs' failure to allege specific facts showing that PSNH knew at the time the alleged representation was made that it was false. See Tessier, 162 N.H. at 332.

The plaintiffs argue that they "sought to discover why the usage in the . . . [new] Easement Deed was expanded to grant PSNH [the right] to add additional lines . . . [and] also sought to discover evidence when the plan to bring electricity from Canada on the old PSNH easements was conceived." We note that the plaintiffs conducted discovery in connection with their original complaint. They state that their "claim rested on the belief that the HVDC project, eventually named the Northern Pass, was planned before the execution of the [new] Easement Deed." The plaintiffs were required to plead a factual basis for this claim at the time they filed suit. See Brzica v. Trustees of Dartmouth College, 147 N.H. 443, 450 (2002) (holding plaintiffs' broad allegation that at some time defendant trustees made and concealed decision failed to meet requirement that petition specify essential details of fraud). There is no support for allowing the plaintiffs to assert fraud claims without a factual basis and search for support for those claims later. See id.

We next address whether the trial court properly dismissed the plaintiffs' claim against all the defendants for slander of title. "In an action for slander of

3

title . . . the plaintiff must prove that the defendant acted maliciously in publishing the words in question." 50 Am. Jur. 2d Libel and Slander § 544 (2006). Malice, within the meaning of this tort, is an intention to vex, injure, or annoy. Wilko of Nashua, Inc. v. TAP Realty, Inc., 117 N.H. 843, 848 (1977) (citing 50 Am. Jur. 2d Libel and Slander § 544 (1970)). "Malice is established by showing that a party made a false statement, with full knowledge of its falsity, for the purpose of injuring the complainant." 50 Am. Jur. 2d Libel and Slander § 531 (2006). "To infer the existence of malice, for the purpose of establishing slander of title, the evidence must support a reasonable inference that the representation not only was without legal justification or excuse, but also was not innocently or ignorantly made." Id.

The plaintiffs alleged various ways in which the defendants published the plan to construct an HVDC project over existing PSNH easements, including those over the Owl's Nest property. We note that they did not allege that the defendants published any statements specifically referring to the plaintiffs' title to the Owl's Nest property. Rather, the allegations are that the defendants published statements about their intended use of their easement rights.

The plaintiffs argue that

Defendants knew that the construction of the Northern Pass with its high steel transmission structures carrying multiple high voltage lines mounted on massive concrete foundations posed the threat of unreasonable use of the easements . . . but, in reckless disregard of the law and in reckless disregard of the impacts that the Northern Pass would have on Owl's Nest, relentlessly promoted the Northern Pass.

The plaintiffs alleged that the defendants "published the claims of right without having obtained the required state and federal permits." However, we note that at least one of the publications alleged to be slanderous involved a permit application. The plaintiffs also alleged that the defendants "published the claims of right without a critical examination of New Hampshire law governing the easements" and "without obtaining an appraisal of Owl's Nest." They alleged that the defendants acted "with malice, in reckless disregard for the truth or falsity of the claims of right." However, we agree with the trial court that "none of the alleged facts support the finding that the Defendants had full knowledge that they did not have the right to use the easements for the Northern Pass project or that they published that information with the purpose of injuring the Plaintiffs."

The plaintiffs argue that "[t]he trial court found [the] plaintiffs' factual allegations [regarding slander of title] in the pleadings insufficient on the very issues that the court prevented [the] plaintiffs from discovering . . . . The plaintiffs could not know what knowledge [the] defendants had. The trial court

would not permit discovery."  However, to withstand a motion to dismiss, a complaint must include factual allegations that are reasonably susceptible of a construction that would permit recovery.  England, 166 N.H. at 371.  There is no support for allowing plaintiffs to plead claims deficiently and to search for the missing facts later.  See Brzica, 147 N.H. at 450.  To the extent that the plaintiffs argue that "[t]he Amended Complaint raises factual issues that must be determined by a jury, not by the trial court on the pleadings," our standard of review requires that we uphold the trial court's grant of a motion to dismiss if the facts pleaded do not constitute a basis for legal relief.  See England, 166 N.H. at 371.

Having tested the facts alleged in the amended complaint against the applicable law, we conclude that the trial court correctly dismissed the amended complaint for failure to state a claim upon which relief may be granted.  See id. In light of this conclusion, we need not address the plaintiffs' arguments that its allegations regarding damages were adequate.

The plaintiffs do not develop their argument that "the trial court refused to enforce the discovery rules," beyond arguing that they were entitled to discovery to supplement their inadequate factual allegations.  Accordingly, we decline to address this argument further.  See Blackmer, 149 N.H. at 49.

Affirmed.

Dalianis, C.J., and Hicks and Lynn, JJ., concurred.

**Eileen Fox,**
**Clerk**

5