NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2015-0361


GREGORY RISO & a.

v.

MAUREEN C. DWYER, ESQ. & a.

Argued: January 7, 2016
Opinion Issued: March 18, 2016


Finis E. Williams, III, of Concord, by brief and orally, for the plaintiffs.


Preti Flaherty Beliveau & Pachios, PLLP, of Concord (William C. Saturley and Gregory L. Silverman on the brief, and Mr. Saturley orally), for the defendants.


LYNN, J. The plaintiffs, Gregory and Sonia Riso, appeal an order of the Superior Court (Nicolosi, J.) granting a motion to dismiss their negligence claim against the defendants, Attorney Maureen C. Dwyer and Barradale, O'Connell, Newkirk & Dwyer, P.A., on the grounds that the defendants owed no duty of care to the plaintiffs to promptly execute Gregory's mother's will. Because we find this case indistinguishable from Sisson v. Jankowski, 148 N.H. 503 (2002), we affirm.

Construed most favorably to the plaintiffs, the record contains the following facts. See England v. Brianas, 166 N.H. 369, 371 (2014).[1] In February 2012, Gregory Riso's mother, Beatrice Riso, hired Dwyer to redraft her will. Beatrice had five children: Rocco, Ronald, Carolyn, Kenneth, and Gregory. Her existing will granted one-third interests in her estate to Kenneth, Ronald, and Gregory; however, she wished to make Gregory her sole beneficiary. Beatrice wanted to change her will because she believed that Kenneth and Ronald had intended to distribute Gregory's share of her estate to Carolyn and Rocco, whom she had disinherited. Beatrice suspected that Kenneth and Ronald had deceived her about the contents of the first will and delayed when she asked for their assistance in revising it. Thus, she wished to remove Kenneth and Ronald from her will without delay. She told Dwyer that she wanted to execute the new will by March 2, 2012.

The plaintiffs and Beatrice met with Dwyer on February 28, and Beatrice provided the necessary information to draft the will. Beatrice, who was 90 years old, also provided a letter from her physician stating that she was mentally competent to make decisions. March 2 passed without Beatrice executing her will. Soon after, Beatrice was hospitalized. Throughout this time, the plaintiffs and Beatrice did not contact Dwyer. Nor did Dwyer contact Beatrice. Beatrice died on March 10, without executing her new will.

The plaintiffs filed a negligence claim against Dwyer and her firm. They alleged that the defendants breached their duty of care by failing to execute Beatrice's will promptly. The defendants, arguing that we rejected such a duty in Sisson, 148 N.H. at 509, moved to dismiss the complaint. The plaintiffs asserted that Sisson was distinguishable because Beatrice had committed to a date certain to execute her will and demonstrated that she would not change her mind, while the decedent in Sisson had not. See Sisson, 148 N.H. at 504. The trial court agreed with the defendants and concluded that the analysis in Sisson did not rely upon the lack of a firm deadline to execute the will. It determined that the reasoning in Sisson instead relied upon the potential for conflict between the decedent and the potential beneficiary. See id. at 507-09. Because the trial court found that the same potential for conflict existed under the circumstances here, it granted the defendants' motion to dismiss. The plaintiffs filed a motion to reconsider, which the trial court denied, and this appeal followed.

On appeal, the plaintiffs argue that we should distinguish this case from Sisson and hold that Dwyer owed them a duty of care because of Beatrice's

---

[1] The defendants argue that we should consider only the facts pleaded in the plaintiffs' complaint. However, the trial court treated the facts that the plaintiffs alleged in their objection to the motion to dismiss as properly pleaded. Additionally, the plaintiffs would have been entitled to assert additional facts in an amended complaint. See ERG, Inc. v. Barnes, 137 N.H. 186, 189 (1993). We therefore accept the additional facts the plaintiffs alleged as properly pleaded.

desire to have her will executed by a date certain, and because her determination to disinherit four of her children eliminated any potential conflict.[2]

"In reviewing the trial court's grant of a motion to dismiss, we consider whether the allegations in the plaintiff's pleadings are reasonably susceptible of a construction that would permit recovery." England, 166 N.H. at 371. We assume the truth of the plaintiffs' factual allegations and "construe all reasonable inferences in the light most favorable to" them. Id. However, we do not assume the truth of the statements in the complaint that are conclusions of law. Id. "We then engage in a threshold inquiry, testing the facts alleged in the pleadings against the applicable law." Id. (quotation omitted). "[I]f the facts pleaded do not constitute a basis for legal relief," we will affirm the trial court's grant of the motion to dismiss. Id. (quotation omitted). "Whether a duty exists in a particular case is a question of law, which we review de novo." Id.

A duty of care "arises out of a relation between the parties and the [need for] protection against reasonably foreseeable harm." Simpson v. Calivas, 139 N.H. 1, 4 (1994) (quotation omitted). A contract between parties is generally "sufficient to impose a duty to exercise reasonable care," but only "to those in privity of contract with each other." Id. (quotation omitted). We have recognized exceptions to this rule, however, when "necessary to protect against reasonably foreseeable harm" to persons not in privity. Sisson, 148 N.H. at 505. In order to determine whether a duty exists, "we examine the societal interest involved, the severity of the risk, the likelihood of occurrence, the relationship between the parties, and the burden upon the defendant." Hungerford v. Jones, 143 N.H. 208, 211 (1998). Ultimately, we weigh "the social importance of protecting the plaintiff's interest" against "the importance of immunizing the defendant from extended liability." Sisson, 148 N.H. at 506 (quotations omitted).

For example, we have recognized an exception to the privity rule in an attorney's duty of care to an intended beneficiary of a will to draft the will non-negligently. See Simpson, 139 N.H. at 7. However, an attorney's duty to an intended beneficiary of a will is limited. In Sisson, we held that a drafting attorney did not owe a duty to an intended beneficiary to execute a will promptly. Sisson, 148 N.H. at 509. In that case, the decedent, who had cancer and did not want to die intestate, told his attorney that he wished to execute a will that would pass his entire estate to his brother. Id. at 504. The attorney prepared the documents, and the decedent expressed that he wished to finalize the documents quickly because his condition was deteriorating. Id.

---

[2] The plaintiffs' complaint alleged that Dwyer breached her duty of care to Beatrice, and that they had standing as intended beneficiaries of the will. However, the trial court treated the claim as alleging a duty owed to the plaintiffs, not to Beatrice, and, on appeal, the plaintiffs press only the argument that the trial court erred in holding that the defendants owed no duty to them.

The attorney met with the decedent to execute his will, but at the attorney's suggestion, the decedent decided to add a contingent beneficiary clause to the will.  Id. at 504-05.  When the attorney returned with the revised will three days later, she did not believe the decedent had testamentary capacity to execute the documents and left with the will unexecuted.  Id. at 505.  After leaving the decedent that day, the attorney made no further inquiries into the decedent's capacity, and did not return to execute the will.  Id.  The decedent died intestate.  Id.  The decedent's brother filed a negligence action against the attorney, arguing that the attorney had a duty to promptly execute the will.  Id.

In Sisson, we considered whether the importance of the plaintiff's interest outweighed the importance of protecting the defendant from additional liability.  Id. at 507-09.  "After weighing the policy considerations the parties identif[ied], we conclude[d] that the potential for conflict between the interests of a prospective beneficiary and a testator militates against recognizing a duty of care."  Id. at 509.  We noted that the decedent and his intended beneficiary may have had conflicting interests in the timing of the execution of the will.  Id.  Although beneficiaries may be interested in the prompt execution of the documents, "the testator or testatrix may be interested in having sufficient time to consider and understand his or her estate planning options."  Id.  We concluded, "Creating a duty, even under the unfortunate circumstances of this case, could compromise the attorney's duty of undivided loyalty to the client and impose an untenable burden upon the attorney-client relationship."  Id.

The plaintiffs argue that this case is distinguishable in two ways: first, in Sisson, the record lacked a date certain to execute the will; and second, the attorney in Sisson was still engaged in the drafting process with the decedent.  These facts, they argue, demonstrated that the attorney in Sisson could not be sure that the decedent had settled on an estate plan, or that he would not change his mind.  Beatrice, on the other hand, established a firm deadline for executing her will and had decided to disinherit four of her children after discovering that they had deceived her.  The plaintiffs argue that these facts indicated that she would not have changed her mind and eliminated any potential for conflict.  Therefore, they argue, we should distinguish this case from Sisson.

Although we stated in Sisson that the record did not include a date certain for execution of the will, id. at 504, our reasoning did not rely upon that fact, see id. at 508-09.  Instead, we balanced the competing policy each party asserted and resolved the question in favor of protecting an attorney's undivided loyalty to her client.  Id.  We concluded, "It is the potential for conflict that is determinative, not the existence of an actual conflict."  Id. at 509 (quotation omitted).  This potential for conflict exists until the will is executed, even if the decedent commits to a deadline, because she may still change her mind.  We recognized this difficulty in Sisson:

4

> A client who engages an attorney to prepare a will may seem set on a particular plan for the distribution of her estate. It is not uncommon, however, for a client to have a change of heart after reviewing a draft will . . . . Attorneys could find themselves in a quandary whenever the client had a change of mind, and the results would hasten to absurdity.

Id. at 508 (quotation and ellipses omitted).

To hold that the existence of a specific date for the execution of Beatrice's will would establish a duty from Dwyer to the plaintiffs would undermine her duty of undivided loyalty to Beatrice. The fact that Beatrice seemed determined to disinherit four of her five children did not eliminate potential conflict. We ruled against a duty to the intended beneficiary to draft the will promptly to protect the decedent's interest in "having sufficient time to consider and understand his or her estate planning options." Id. at 509. This encompasses all the considerations a client might make, not only who the beneficiary might be. In Sisson, for example, the decedent changed his mind about including a contingent beneficiary clause in his will on the date he intended to execute all of his estate documents. Id. at 504-05. Thus, even if we were to agree with the plaintiffs that Beatrice's "certainty" eliminated the potential for conflict as to who her beneficiary would be, that would not eliminate the potential for conflict as to some other aspect of her estate plan. Because the potential for conflict still exists on these facts, we conclude that the defendants did not owe a duty to the plaintiffs.

Affirmed.

HICKS and BASSETT, JJ., concurred.

5