**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2017-0277, <u>Michael D. Roche & a. v. City of Manchester</u>, the court on August 2, 2018, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The plaintiffs, a group of former employees of the defendant, City of Manchester, appeal two orders of the Superior Court (<u>Ruoff</u>, J., and <u>Kissinger</u>, J.) in favor of the City. We affirm in part, reverse in part, and remand.

The record reflects the following facts. The plaintiffs are a group of now-retired former City of Manchester employees who were enrolled in the Manchester Employees' Contributory Retirement System (MECRS). MECRS is governed by Laws 1973, chapter 218, as repealed and reenacted by Laws 2002, chapter 194, and as thereafter amended. <u>See</u> Laws 1973, ch. 218 (repealed and reenacted by Laws 2002, ch. 194) (the Act). Section 8 of Chapter 218 requires the City to "appropriate annually to the retirement board the amounts required to fund the benefits" that the plan provides. Laws 1973, 218:8 (repealed and reenacted by Laws 2002, 194:1). Sections 9 and 28 require employees to contribute a total of 5% of their calendar year earnings in addition to the City's contribution. <u>See</u> Laws 1973, 218:9, I (repealed and reenacted by Laws 2002, 194:1); Laws 1973, 218:28, II (repealed and reenacted by Laws 2002, 194:1 and amended by Laws 2005, 41:1).

One group of plaintiffs is union-affiliated, and the rest of the plaintiffs are nonaffiliated, meaning they were not members of, or represented by, any collective bargaining units. Prior to retiring, all plaintiffs entered into agreements that provided for severance packages. The union-affiliated plaintiffs, represented by three different unions, entered into collective bargaining agreements with the City (CBAs). The CBAs contained nearly identical severance clauses stating, in pertinent part, that employees who:

> retire on or after March 1, 2012 and prior of June 30, 2015 shall have earned a severance benefit of $13,000. The City may withhold from this benefit such amounts as are necessary to pay the employer and the employee contributions to the [MECRS].

The CBAs also contained substantially similar clauses defining "grievance" as "a claim or dispute arising out of the application or interpretation of this agreement," and specifying a procedure for resolving grievances, culminating in

binding arbitration. The nonaffiliated plaintiffs all agreed to an employees' benefits package (the Understanding) with the City. The Understanding provided that "[r]etirements between 3/1/2012 and 6/30/2015 shall earn $13,000 severance. The City may withhold the employee and the employer contributions to the retirement system."

It is undisputed that all of the plaintiffs retired from City employment within the time period specified by the severance provisions. Upon their retirements, the plaintiffs accepted severance payments in the gross amount of $13,000. Both employee and employer contributions were withheld from that amount pursuant to the CBAs and the Understanding. As a result of the severance payments, the plaintiffs' retirement benefits increased.

The plaintiffs subsequently filed a complaint alleging that the provisions of the CBAs and the Understanding permitting the City to withhold the employer contributions from the employees' severance payments are "ultra vires," as contrary to the Act, and, therefore, unenforceable. The plaintiffs requested that the court order the City to refund the amount of employer contributions withheld from the severance payments. The City moved to dismiss the union-affiliated plaintiffs' claims, arguing that the Public Employee Labor Relations Board (PELRB) had primary jurisdiction. The trial court granted the City's motion to dismiss, concluding that, because the union-affiliated plaintiffs' claims relate to the application of CBA provisions, the PELRB had primary jurisdiction. The trial court also reasoned that it lacked jurisdiction based upon the language of the grievance clauses of the CBAs, which required claims arising out of the application or interpretation of a CBA to be submitted to binding arbitration. The trial court denied the union-affiliated plaintiffs' motion to reconsider.

The City then moved for summary judgment on the nonaffiliated plaintiffs' claims, arguing that the Act does not prohibit the withholding of City contributions from employees' severance packages. The trial court granted the motion, concluding that the Understanding is not ultra vires because the Act merely provides a framework for funding the retirement plan and neither entitles employees to a severance payment nor prohibits severance agreements such as the Understanding. In support of this ruling, the court noted that the MECRS Board of Trustees reviewed, but did not object to, the severance provision contained in the Understanding. The trial court denied the nonaffiliated plaintiffs' motion to reconsider. This appeal followed.

On appeal, the plaintiffs argue that the trial court erred when it dismissed the union-affiliated plaintiffs' claims on jurisdictional grounds, and when it granted summary judgment to the City on the nonaffiliated plaintiffs' claims. We turn first to the plaintiffs' argument that the trial court should have retained jurisdiction because the union-affiliated plaintiffs' claims arise out of a violation of the Act, rather than a violation of the terms of the CBAs

2

themselves. The City counters that the trial court was correct that the union-affiliated plaintiffs' claims arise out of the application or interpretation of the CBAs, and, therefore, the PELRB had primary jurisdiction. The City further contends that, while the PELRB has jurisdiction to determine whether a dispute involves a matter covered by a CBA, it does not typically have jurisdiction to interpret the CBA when it provides for binding arbitration. It asserts that, because the CBAs include grievance provisions providing for binding arbitration, the trial court correctly found that an arbitrator, not the trial court, would have jurisdiction to resolve this dispute. We agree with the plaintiffs.

"In reviewing the trial court's grant of a motion to dismiss, we consider whether the allegations in the plaintiff[s'] pleadings are reasonably susceptible of a construction that would permit recovery." England v. Brianas, 166 N.H. 369, 371 (2014). However, "[w]hether the trial court had jurisdiction is a question of law subject to de novo review." Univ. Sys. of N.H. Bd. of Trs. v. Dorfsman, 168 N.H. 450, 453 (2015).

Generally, "claims involving public employment disputes must be resolved before the PELRB in the first instance." Collins v. City of Manchester, 143 N.H. 708, 710 (1999); see also RSA 273-A:6, I (2010) (providing that PELRB has jurisdiction over all violations of RSA 273-A:5); RSA 273-A:5, I(h) (2010) (prohibiting breach of collective bargaining agreement by public employer). However, the PELRB's jurisdiction does not extend to claims that do not emanate from a CBA. See Stankiewicz v. City of Manchester, 156 N.H. 587, 591-92 (2007). In Stankiewicz, we held that the superior court had jurisdiction over a union employee's claim. Id. Although the employee's union had entered into a CBA with the City, the employee argued that his claim stemmed from a controlling ordinance. Id. at 588-89. We stated, "while the determination of arbitrability is generally within the jurisdiction of the arbitrator or the [PELRB], that rule applies when the relevant claim arises under the CBA." Id. at 591 (citation omitted). We concluded that because "the plaintiff's claim . . . arises out of a right conferred by [the controlling ordinance,] . . . the plaintiff is seeking to vindicate a right that does not emanate from the CBA." Id.; see also Fowler v. Town of Seabrook, 145 N.H. 536, 539 (2000) ("Where the plaintiff seeks to vindicate a statutory right, the presumption of arbitrability does not pertain. Such a claim is not arbitrable unless there is a 'clear and unmistakable waiver' of the employee's right to pursue his statutory claim." (citation omitted)).

Here, the merits of the plaintiffs' claims do not arise out of an alleged violation, misinterpretation, or misapplication of the CBAs. Rather, the plaintiffs' complaint states: "The City has reported the entire $13,000.00 to the Retirement Board as earnings and upon information and belief withheld both the employee's 5% contribution and the City's actuarially determined contribution contrary to the provisions of Laws 218:4, VIII and laws 218:8."

3

(Emphasis added.)  The plaintiffs' claims concern the validity of the CBAs' provisions in light of the Act — their claims do not emanate from provisions of the CBAs.  The CBAs' arbitration clauses are not triggered for the same reason.  In other words, the plaintiffs' claims are not arbitrable "grievance[s]" because they do not "arise[] out of the application or interpretation of [the CBAs]."  Accordingly, we conclude that the trial court erred when it ruled that it did not have jurisdiction to hear the union-affiliated plaintiffs' claims.

We now turn to the plaintiffs' argument that the trial court erred when it granted summary judgment to the City, with regard to the nonaffiliated plaintiffs, on the merits of their claim that the severance provision of the Understanding is contrary to, or violates, the Act.  "When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and inferences properly drawn from them, in the light most favorable to the non-moving party."  Sabinson v. Trustees Of Dartmouth College, 160 N.H. 452, 455 (2010).  "We review the trial court's application of the law to the facts de novo."  Id.

Deciding whether the severance provision violates the Act requires us to engage in statutory interpretation.  "Statutory interpretation is a question of law, which we review de novo."  Petition of Malisos, 166 N.H. 726, 729 (2014).  "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning."  Id.  "We interpret legislative intent from the statute as written, and will not consider what the legislature might have said or add language that the legislature did not see fit to include."  Id.  "When the language of the statute is plain and unambiguous, we need not look beyond the statute itself for further indications of legislative intent."  Id.

The nonaffiliated plaintiffs argue that the severance provision is contrary to the Act for two reasons: (1) it requires employees to contribute and have withheld from their severance payment more than the 5% employee contribution rate set forth in the Act;  and (2) it allows the City's contributions to be deducted from the employees' severance payments, rather than from the City's own funds.

As a threshold matter, we observe that the Act does not explicitly refer to severance packages.  However, the City alleged in its cross-complaint — and the plaintiffs admitted in their answer — that the $13,000 severance payments are "earnings" as defined by the Act.  See Laws 1973, 218:4, VIII (repealed and reenacted by Laws 2002, 194:1) (defining "earnings" as "the total salary or wages of a member for the member's employment with the city").  The City also alleged, and the plaintiffs admitted, that, because the severance payments are "earnings" under the Act, they are subject to the employee and employer contribution requirements.  Based upon the parties' allegations and admissions, we assume, without deciding, that the severance payments

4

constitute "earnings" that are subject to the employee and employer contributions required by the Act.

The plaintiffs first argue that the employee and employer contribution formulas provided in the Act are mandatory, and that neither the employer nor the employee may contribute more or less than the amounts provided for in the Act. They argue that, if the City can withhold from the employee's severance payment an amount equal to both its contribution and the employee's contribution, then the employee's total contribution exceeds the 5% employee contribution mandated by the Act, thereby violating it. The plaintiffs argue, in the alternative, that even if employees are permitted to contribute more than 5% of their earnings, they can do so "only when required or allowed by the [Act]." The plaintiffs acknowledge that certain provisions of the Act allow employees to elect to contribute more than 5% in order to enhance their retirement benefits. However, they assert that, because they did not elect to increase their contributions under those specific provisions, the withholding violates the Act.

The City counters that 5% of earnings is not the maximum amount an employee can contribute and that certain provisions of the Act specifically allow employees to elect to contribute more than 5% in order to increase their retirement benefits. It argues, therefore, that the employees' election in the severance provision to contribute more than 5% in order to receive an increased retirement benefit does not violate the Act. We agree with the City.

Reading the Act in its entirety, it establishes a minimum mandatory amount of employee contributions: 5% of employee earnings. See Laws 1973, 218:9 (repealed and reenacted by Laws 2002, 194:1 and amended by Laws 2003, 102:1, Laws 2008, 90:4); Laws 1973, 218:28, II (repealed and reenacted by Laws 2002, 194:1 and amended by Laws 2005, 41:1). It also provides specific opportunities for employees to contribute more than this minimum amount in exchange for enhanced retirement benefits. For example, Laws 1973, 218:9, III(a), as amended by Laws 2003, 102:1, provides that, in addition to the standard employee contributions:

> [A]ny member may provide an additional retirement allowance by making contributions at an additional rate not in excess of the rate computed to be sufficient to provide an additional retirement allowance which . . . will result in a total retirement allowance not in excess of 50 percent of his final average earnings.

Laws 1973, 218:9, III(a) (repealed and reenacted by Laws 2002, 194:1, and amended by Laws 2003, 102:1); see also Laws 1973, 218:12, VI (repealed and reenacted by Laws 2002, 194:1, and amended by Laws 2004, 159:1, Laws 2005, 40:4) (allowing employees with service dates prior to January 1999, before which the retirement benefit calculation rate was 1.5% of final average

earnings multiplied by years of employment, to elect to pay an additional amount to receive a retirement benefit based on 2% of final average earnings). These provisions demonstrate that the legislature did not intend 5% of the employee's earnings to be his or her maximum contribution. Instead, these optional provisions evince a legislative intent that an employee may agree to contribute more than the mandatory contribution in exchange for an enhanced retirement benefit.

Further, nothing in the Act demonstrates a legislative intent that these optional provisions represent the only mechanism by which employees may obtain increased retirement benefits. Indeed, the plain language of the Act does not prohibit employees from contracting with the City to make additional contributions, under other terms not provided for in the Act, in exchange for receipt of an increase in retirement benefits. See Manchester Educ. Ass'n v. Manchester, 114 N.H. 83, 85 (1974) (holding that city charter did not prevent plaintiffs from receiving more favorable sick leave benefits under contract with city where the charter imposed only a minimum leave requirement and did not impose any prohibition on the ability to contract for greater sick benefits). Therefore, we conclude that the severance provision — in which the employees agreed to contribute more than 5% of their severance payment earnings to cover the City's contributions in exchange for the severance payment that increased the employees' retirement benefit — does not violate the Act's provisions regarding employee contributions.

Second, the nonaffiliated plaintiffs argue that the severance provision is contrary to the Act because it allowed the City to deduct the amount of its own contribution from the employees' severance payment, rather than from the City's own funds. The City counters that the Act does not specify the source of the City's contribution, and, therefore, withholding the employer's contribution from the severance payment did not violate the Act. Again, we agree with the City.

The Act provides that "[t]he city shall appropriate annually to the retirement board the amounts required to fund the benefits set forth in the [A]ct as determined by the retirement board on the basis of an actuary's valuation, which shall be based on sound actuarial funding methods, assumptions, and principles." Laws 1973, 218:8 (repealed and reenacted by Laws 2002, 194:1). This language does not specify the source of the City's contribution; it requires only that the City appropriate the requisite amount to fund the benefits provided by the Act. Nor does this language, or any other language in the Act, prohibit employees from agreeing to allow the City to fund its contributions through deductions from the employees' earnings — here in the form of severance payments — in exchange for an enhanced retirement benefit. Accordingly, we conclude that the severance provision does not violate the Act and that the trial court did not err when it granted summary judgment to the City on the merits of the nonaffiliated plaintiffs' claims.

6

Finally, the plaintiffs appear to argue that the trial court erred, in its summary judgment order, by misrepresenting and relying upon certain rulings of the MECRS Board of Trustees (Board). We disagree. Although the trial court noted that the Board "made no mention of the [severance provision] being inconsistent with the [Act]," this observation was merely offered as independent support for its conclusion that, as a matter of law, the severance provision was not contrary to the Act. See Petition of Malisos, 166 N.H. at 729 (recognizing that "[s]tatutory interpretation is a question of law"). Accordingly, we conclude that the trial court did not err in this respect.

Affirmed in part; reversed in part; and remanded.

LYNN, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

**Eileen Fox,**
**Clerk**

7